GEORGIANA NORWOOD, Administratrix v. THE RALEIGH & GASTON RAILROAD COMPANY.

*Railroad Accident—Negligence—Evidence—Burden of Proof.*

1. Where the body of the plaintiff's intestate was found, just after defendant's freight train had passed, lying about 71½ yards north of the bridge of the defendant railway company, over which there was a plank crossing used by persons as a footway leading to a house to which he had just before declared his purpose to go, with the head resting against the end of a cross-tie, a fracture in the skull and bruises upon the hip and shoulders but no other wounds, it was *Held*, (1) that in the absence of direct proof as to the position and conduct of the intestate at the time of the killing, the necessary inference was that his own carelessness in going upon defendant's track and exposing himself to injury was the proximate cause of his death; (2) that if the engineer could, by proper watchfulness, have seen intestate standing or walking on the track, he would not have been negligent in acting on the assumption that intestate would step off in time to avert injury; (3) that if intestate was seen, or could, by proper care, have been seen by the engineer, sitting upright on the end of a cross-tie, as the testimony tended to show his position to have been, the latter was justified in believing that he would get out of danger.

2. That, whether intestate was a trespasser or a licensee, it was his duty to keep out of the way of a passing train, and his failure to do so would be considered the proximate cause of his death, in the absence of testimony tending to show that the engineer could, by proper watchfulness, have seen him lying apparently insensible on the track, or in peril upon the bridge in time to have avoided the injury by using the appliances at his command, and without jeopardy to persons on the train.

3. After contributory negligence is shown, the plaintiff cannot relieve himself of the burden of proving some subsequent act or omission of the defendant to have been the proximate couse, by offering testimony that merely raises a conjecture. He must show the nature of such act or omission, so that the jury may fairly infer that it was the immediate cause of the injury.

4. The testimony that the head-light shone in the door of a house 150 yards up the road, did not tend to show the actual condition of intestate when stricken, or that the engineer could have seen him.

5. The testimony of the engineer and fireman, that they kept a careful lookout is not contradicted directly, and does not seem to be in conflict with any other evidence.

This was a CIVIL ACTION, brought by the plaintiff to recover damages for the negligent killing of her intestate by the defendant's engine, and tried at April Term, 1892, of WAKE Superior Court, *Connor, J.*, presiding.

After the testimony was closed the Court intimated that the plaintiff was not entitled, in any view of the evidence, to recover. The plaintiff submitted to judgment of nonsuit and appealed.

The substance of all the material testimony was as follows: The body of plaintiff's intestate was found on the night of December 27, 1891, about two hours after dark, seventy-one and one-half yards north of a bridge over a creek on defendant's road, on the right hand side of the track (going north), the top of his head resting against the end of a cross-tie, to which some of his hair seemed to be adhering. There was a bruise upon his hip, another on his shoulder, and a fracture which made a hole in his skull. There were no other injuries appearing from an external examination of his person. There was a curve twenty-one yards south of the bridge, and the bridge was fifty-four and three-fourths yards long. Intestate lived north of the bridge, and there was a path that came upon the track one hundred and twenty-six yards south of the bridge. There was a single plank-way for the use of persons walking, which was laid along the middle of the bridge for its entire length. The usual route for persons on foot from the house of intestate to the house of one Jeffries, who lived a half-mile north of the bridge, and to whose house intestate had announced his purpose to go after his wife, on leaving home after dark, was along said path over the bridge on said plankway, and along the track, to about the point where the body was found. There the path diverged from the road.

An engine and tender belonging to defendant passed over the bridge going north a short time before the body was found at the end of the cross-tie. Neither the engineer nor

his fireman, nor any other witness, testified that he saw the engine strike intestate. The engineer and fireman both testified that a constant lookout was kept by the engineer at and rear where the body was found; that they did not see intestate at all, and that it would have been very difficult, if possible, to have seen a man sitting on the end of the crosstie on the side of the track, but on account of the curvature of the track an object could have been seen from that side eight or ten yards further than from the left side. All the testimony tended to show that if intestate had been lying prostrate on the track, his body would have been mutilated, and if standing on the track his legs would have been crushed, broken, or injured in some way. He had apparently received no injuries but those already mentioned. The engineer testified that he looked out carefully all the time from his place on the right side of the cab; had a good head-light; his engine was in good condition; that he could have seen a man seventy-five yards if he were standing on a straight track in his front, but could not have stopped his engine in less than seventy-five yards; that an object like a man sitting on the cross-tie where intestate's body was found could not be seen more than fifty or sixty yards, and that a man's body being so located would probably be run over before the engineer could distinguish it as the body of a man; that he examined the engine next morning on hearing of Norwood's death, and found no blood on it; also examined the track on the bridge, and north of it, and found no blood on it. The foreman of the shops testified that on a straight track a good head-light would enable an engineer to see a man on the track one hundred and fifty yards, but that at the point where intestate was lying, if he had been sitting on the end of the cross-tie, the engineer would first have discovered, at a distance of thirty or forty yards, that there was an object on the track, but could not have distinguished what it was. The fireman testified that when not engaged in putting wood

on the fire he kept a constant lookout on the left side of the engine, as did the engineer on the right, and saw no one; that the engine and tender could have been stopped sooner than a train; that the engine was going down grade.

There were conflicting opinions as to the rate of speed at which the engine was running, being estimated from twenty-five to fifty miles an hour. A witness who lived near the track, about one hundred and fifty yards on the east side of the track and north of the bridge; testified that the head-light would shine on his house when an engine reached the curve on the south, but did not say whether the light was sufficient to enable an engineer to distinguish objects at any particular distance on the track.

There was evidence that tracks were found at the end of the cross-tie, as if made by some one sitting on it. It was also in evidence that intestate had been drinking, and seemed somewhat intoxicated on the night he was killed. There was an embankment about five feet high where the intestate was killed, but a person could have walked up to the top of it. There was testimony tending to show that persons living in the neighborhood had used the path along the road and the bridge as a means of crossing the creek for thirty-five years, but there was no evidence that the company had assented to such use of its road, or that it had been so used under a claim of right, and with the knowledge of the defendant, or any of its officers or employees.

The engineer did not blow his whistle in approaching the bridge or the crossing, which was a short distance below it.

*Messrs. Armistead Jones* and *S. G. Ryan*, for plaintiff.
*Mr. John Devereux, Jr.*, for defendant.

AVERY, J.—after stating the case, proceeded: Plaintiff's intestate could not have received the wounds, which caused his death, without going at least upon the end of a cross-tie

on defendant's track. When he placed himself in a position where he was liable to be stricken by a passing engine, it was his duty to keep a sharp lookout, and if he carelessly, recklessly, or in a drunken stupor, remained on the track when the engine was approaching and till it came in contact with him, he was negligent. If he put himself in the way of the moving engine and was killed by it, his negligence was, at least, a contributory cause of his death. *McAdoo* v. *Railroad*, 105 N. C., 140. If the engineer was negligent in failing to blow at the crossing, or on approaching the bridge, intestate's subsequent refusal or failure to get off the track was, nevertheless, the proximate cause of the injury sustained, unless it can be reasonably inferred from the testimony that, after intestate went upon the track, the engineer did see, or could by ordinary care have seen, not simply that he was on the track, but that he had placed himself in peril by going upon the bridge, or appeared to be lying, drunk or insensible, in the way of the engine, and that after he could by proper watchfulness have had reasonable ground to believe that such was the condition of intestate, it was in the power of the engineer, by the use of the appliances at his command, and without peril to any passenger on his train, to have stopped the engine in time to have avoided the injury. *Deans* v. *Railroad,* 107 N. C., 686; *Clark* v. *Railroad,* 109 N. C., 430; 1 Shearman & Red., sec. 97.

If it were conceded that the engineer saw the deceased walking along the track, or sitting upright on the end of a cross-tie, in time to have stopped the train without peril or difficulty, he was justified in believing, up to the last moment, in the absence of knowledge or information, that he was insane or deaf, that intestate would take reasonable precaution for his own safety by moving out of the way. *McAdoo* v. *Railroad, supra; Daily* v. *Railroad,* 106 N. C., 301. It is not material whether (in passing upon the questions involved in this case) the intestate went upon the road under a license

or as a trespasser. "The license to use does not carry with it the right to obstruct the road and impede the passage of trains." McAdoo's case, *supra.* If he was an admitted trespasser, the plaintiff had a right to recover, if by the use of ordinary care after he went upon the track the defendant's servant might have averted the injury. *Lay* v. *Railroad,* 106 N. C., 404; Clark's case, *supra.*

Were we to concede, for the sake of the argument merely (what we do not propose to announce as the law), that the presumption of negligence on the part of the defendant company would arise upon proof that plaintiff's intestate was killed by defendant's engine on its track (2 Wood R. R. Law, 1096, note 1101), there would be no presumption, in the absence of proof, that such negligence was the proximate cause of the injury to intestate. No such presumption would be stronger than that created by express provision of the statute in reference to killing stock, and that is rebutted upon the facts being shown by witnesses present. *Doggett* v. *Railroad,* 81 N. C., 459. No witnesses as to the management of the train, or the position and conduct of intestate at the moment when the injury was inflicted, were offered except the engineer and fireman. Both of them negatived the fact of seeing intestate, or the possibility of seeing him by keeping a proper look-out, till it would have been too late to save him by an attempt to stop the engine. They are corroborated, rather than contradicted, by other testimony. The nature of the wounds was such, according to the evidence, as to lead to the conclusion that they must have been inflicted on the end of the cross-tie, where intestate could not have been seen. The fact that at a house 150 yards off the road, or up the road, the head-light shone, without further evidence that it shown so brightly as to make the figure of a man distinguishable and show his danger, is not sufficient to go to the jury to show that the injury might have been avoided. There was no testimony tending to show that

111—16

intestate could have been seen while on the bridge or on the track, and in the absence of such evidence the fact that there was a bridge or a bank, such as was described, in the vicinity, is entitled to no weight in passing upon the single question to be considered. The fact that an engine was running at the rate of twenty-five or fifty miles an hour in a place remote from town, may be important in determining within what distance the train could have been stopped after the engineer could, by proper watchfulness, have seen intestate on the track in an apparently helpless condition. But it was incumbent on plaintiff, if she would avoid the consequences of intestate's negligence by showing some act of defendant's servants to be the real cause, to show from her own testimony, or that of defendant, that when the engineer could first have seen intestate, he was not only on the track but was in such a situation or condition that he could not probably escape if the train continued to move on without diminishing its speed, and neglected to use the means available and safe to stop it. Dean's and Clark's cases, *supra*. It was not sufficient to prove only that he was seen standing or walking on the track. McAdoo's case, *supra*.

After contributory negligence is shown, the plaintiff cannot relieve himself of the burden of proving some subsequent act or omission of the defendant to have been the proximate cause, by offering testimony that merely raises a conjecture. He must show by facts or circumstances the nature of the act or omission, so that the inference may be fairly drawn that it was the immediate cause of the injury.

Upon a review of the testimony, we concur with the Court below.

Affirmed.