*SARAH HIGH v. CAROLINA CENTRAL RAILROAD COMPANY.

*Injury to Person on Railroad Track—Contributory Negligence—
Liability of Railroad Company—Defective Record on
Appeal.*

1. Where an engineer sees on the track, in front of the engine which he
is moving, a person walking or standing whom he does not know
at all or who is known by him to be in full possession of his senses
and faculties, the former is justified in assuming, up to the last
moment, that the latter will step off the track in time to avoid
injury, and if such person is injured the law imputes it to his own
negligence and holds the railroad company blameless. (*McAdoo*
v. *Railroad*, 105 N. C., 140, *followed;* and *Deans* v. *Railroad*, 107
N. C., 686 : *Bullock* v. *Railroad*, 105 N. C., 180, and *Clark* v. *Railroad*, 109 N. C., 430, *distinguished*).

2. A record on appeal which does not show that a Superior Court was
opened and held at all in the county from which the appeal comes
is fatally defective.

ACTION, tried at Fall Term, 1892, of BLADEN Superior
Court, before *Winston, J.* The action was brought by
plaintiff to recover damages alleged to have resulted by
reason of defendant's negligence. The following issues were
submitted to the jury by consent:

1. Was the plaintiff injured by the negligence of defendant as alleged?

2. Did plaintiff by her own negligence contribute to the
injury?

3. Did plaintiff execute the release set out in the
answer?

4. If plaintiff executed the release, did she understand
the meaning and effect of it?

5. What damage, if any, is the plaintiff entitled to?

*BURWELL, J., having been of counsel, did not sit on the hearing of
this case.

The plaintiff testified as follows: "I was on the railroad at Rosindale on February 4, 1891, on the side-track, and did not hear the engine until it ran over my foot. It had touched me before I heard it and I jumped as I was going from the train; heard no whistle or bell. My right foot was crushed and the doctor cut it off; was in bed for three or four weeks; train was running slowly and went only a short distance after it struck me. It was a freight train."

Upon cross-examination plaintiff said: "I first saw the train below the end of the switch. It was then moving on the main track. This was when I first came up to the railroad crossing. I first was on the main track and then got on the side-track. I got on the main track at Clark's store at Rosindale and went up the same a short distance to the pump-house; did not look back again. If I had looked back I could have seen the engine. It was a straight track. I could have stepped off the side-track. I was going home from Clark's house, but did not follow the dirt road. I went up the railroad. The dirt road to my house crosses the railroad. I could have crossed over the side-track, but did not. I had seen the train below me; no trestle on the road near Rosindale; no embankment; no fences. I was in the middle of the side-track when the engine struck me and I got all off but my foot."

On re-direct examination she stated: "I live a mile from Rosindale, and the county road leads by my house to Elizabethtown; no dirt road near railroad track. The doctor came the night I was hurt. I was hurt in the morning. He gave me no medicine to quiet me. I could have walked along the side of the railroad at the point I was struck."

Clark, Sheriff, a witness for the plaintiff, testified: "I was at my store, fifty or seventy-five yards from the plaintiff, when the accident happened, and saw her a little while

afterwards. The engine was running slowly when it passed my store; heard no bell or whistle, but heard the whistle blow for the station where freight was put off that morning. Freight trains usually go on main track until freight is put off; engineer could have stopped the train in ten feet at the speed he was going. It was up grade a little at that point. Plaintiff was suffering, but was conscious, and wanted to go home. By the side of the cross-ties is a path and a dirt road, which was a half mile out of her way home. I think the mail train was at the tank, and both trains blew for the station. There was nothing there to prevent one's seeing the train. Plaintiff could have crossed the side-track after she crossed the railroad and might have gone along the side of the track. She said to me that she thought the engine was on the straight track until it brushed her and she jumped and fell, and that it was her own fault that caused the injury. Have known plaintiff for several years. She is neither blind nor deaf nor crazy, nor was she lame before receiving the injury. Rosindale is a place on the defendant railroad, where there is located nothing but a wood-rack and pump-house."

James Councill, a witness for plaintiff, and her brother-in-law, testified: "I went to see the plaintiff and waited on her for four weeks. She suffered pain, and for three weeks did not sleep. The doctor left no medicine for her to take. I told Elmore I thought it was plaintiff's own negligence that caused the accident."

The plaintiff was recalled and testified that she walked across the main track to the side-track, where she thought the train would not come, and she walked on up the side-track. It is needless to set out defendant's rebutting testimony; it is not necessary to the understanding of the opinion.

At the conclusion of the evidence, the Court being of opinion that plaintiff was not entitled to recover, directed the jury to answer the second issue, Yes; and thereupon judgment was rendered in favor of the defendant, and the plaintiff appealed, assigning error as follows:

1. There was evidence sufficient to justify the jury in finding a verdict for the plaintiff, and the presiding Judge should have submitted it to the jury.

2. There being some evidence, it was the duty of the Judge to submit it with proper instructions to the jury, and the failure of the Judge to do this was error.

*Messrs. Strong & Strong,* for plaintiff (appellant).
*Mr. W. H. Neal,* for defendant.

AVERY, J.: This case is governed by the principle laid down in *McAdoo* v. *Railroad,* 105 N. C., 140. Where an engineer sees, on the track in front of the engine which he is moving, a person walking or standing, whom he does not know at all, or who is known by him to be in full possession of his senses and faculties, the former is justified in assuming, up to the last moment, that the latter will step off the track in time to avoid injury, and if such person is injured the law imputes it to his own negligence, and holds the railroad company blameless. *Meredith* v. *Railroad,* 108 N. C., 616; *Norwood* v. *Railroad,* 111 N. C., 236.

This case is clearly distinguishable from *Deans* v. *Railroad,* 107 N. C., 686; *Bullock* v. *Railroad,* 105 N. C., 180, and *Clark* v. *Railroad,* 109 N. C., 430. In the first case named the engineer could by proper watchfulness have seen that the person killed was lying apparently helpless across the track, at a distance of half a mile; in the second, the engineer at a distance of a thousand yards actually saw a man running on the track waving his handkerchief as a

signal to stop, and also saw or might have seen a horse and wagon apparently stalled at a crossing one hundred and fifty yards further on; in the third, the engineer could have seen in time to avert injury that the decedent had gone upon a trestle in his front, from which he could not step off in time to avert injury, if the speed of the engine should not be diminished.

The failure of the engineer to keep a proper lookout subjects the company to liability only in those cases where, if he had seen the situation of the injured party, it would have become his duty to pursue such a course of conduct as would have averted it. Whether he saw the plaintiff at a distance of one hundred and fifty yards or of ten feet, he was not at fault in acting on the supposition that she would still get out of the way. It is not material whether the train was moving fast or slow in such a case as this. For present purposes the relative condition of the parties would have been the same had the engine been moving fifty miles an hour and had she been discovered on the track at a distance that would be traversed in the same time that would have been consumed in going ten feet at the rate of ten miles an hour, unless additional liability should have been incurred by running so fast in a populous town.

If the plaintiff had looked and listened for approaching trains, as a person using a track for a foot-way should in the exercise of ordinary care always do, she would have seen that the train, contrary to the usual custom, was moving on the siding. The facts that it was a windy day and that she was wearing a bonnet, or that the train was late, gave her no greater privilege than she would otherwise have enjoyed as licensee; but, on the contrary, should have made her more watchful. *Norwood* v. *Railroad, supra.* There was nothing in the conduct or condition of the plaintiff that imposed upon the engineer, in determining what

course he should pursue, the duty of departing from the usual rule that the servant of a company is warranted in expecting licensees or trespassers, apparently sound in mind and body and in possession of their senses, to leave the track till it is too late to prevent a collision. *Meredith* v. *Railroad, supra.*

The record is fatally defective, in that it does not show that a Superior Court was opened and held for Bladen county at all. Besides, the judgment is not sent up, nor does it appear whether it was founded upon a verdict on the issues or a nonsuit, to which plaintiff submitted on hearing the intimation of the Judge. But it is an appeal by a pauper, and there may be some palliative if not meritorious reason for failing to look after the making up of the transcript, and, if not, we can foresee no evil from viewing the case in the most favorable aspect for the plaintiff by supposing that she submitted to judgment of nonsuit and appealed. Appeal Dismissed.