JAMES EXUM, ADMINISTRATOR OF PAUL EXUM, v. ATLANTIC
COAST LINE RAILROAD COMPANY.

(Filed 29 March, 1911.)

1. Railroads—Pedestrians on Track—Danger—"Look and Listen"—
Negligence.

One who walks on a main-line railroad track, in full possession
of his faculties, when there are quite a number of lateral tracks
in constant use, with walkways between them for the safety of
pedestrians, and from his previous experience as an employee of
the road he should have known that, at the time, a work train
carrying employees to their work customarily passed, owes a duty
to keep a lookout for the dangers to himself necessarily attend-
ing his action; and when it appears from his own evidence, con-
strued in the light most favorable to him, that the injury com-
plained of was caused by his failure or omission to perform this
duty, his negligence will bar his recovery.

2. Railroads—Pedestrians—Licensee—Danger—"Look and Listen"—
Duties.

Whether a trespasser or licensee, one walking on a railroad
track should look, listen, and exercise the vigilance required by
the surroundings, circumstances, and conditions, and the same
obligation in that respect rests upon both.

3. Railroads—Pedestrians—Danger—"Look and Listen"—Duty of
Engineer—Duty of Pedestrian—Avoidance of Injury—Nonsuit.

The plaintiff's intestate, a sound man, with no apparent infirm-
ity, and an employee of defendant railroad company, was walk-
ing along the main-line track going to his work, at the time a
train provided for the purpose of taking him and other employees
to their work customarily passed. At this place there were many
lateral tracks, having walkways between them for pedestrians,
upon which trains were constantly passing. The employees' train,
going in the same direction as plaintiff's intestate, overtook and
killed him as he was walking briskly along on the track. A wit-
ness testified that he saw intestate's danger, and in view of the
plaintiff and defendant's engineer ran from 20 to 30 feet in direc-
tion of intestate, waving his hands and shouting to warn the
intestate of his danger, but did not attract the attention of any
one: Held, (1) it was equally incumbent upon the intestate as
well as the engineer to keep a sharp lookout, and the latter had
the right to assume, had he seen the signals, that the intestate
would see and hear the warnings of the witness, and would step
off the track at the last moment and avoid the injury; (2) judg-
ment of nonsuit upon the evidence was properly sustained.

EXUM *v.* R. R.

4. Railroads—Pedestrians—Danger—"Look and Listen"—Negligence, Concurrent.

Where a pedestrian and an engineer of a railroad company are both negligent in failing to keep a proper lookout for danger, and in consequence the pedestrian is run over and killed or injured, the negligence of both is concurrent, and no recovery may be had in an action for damages against the company.

HOKE, J., concurring; CLARK, C. J., dissenting.

APPEAL from *Guion, J.,* at April Term, 1910, of EDGECOMBE.

This action is brought to recover damages for the alleged negligent killing of plaintiff's intestate, Paul Exum. At the conclusion of the evidence a motion to nonsuit was allowed, and plaintiff appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*Gilliam & Bassett for plaintiff.*
*F. S. Spruill and J. L. Bridgers for defendant.*

BROWN, J. The evidence in this case was all introduced by the plaintiff and in its most favorable aspect for him tends to prove these facts:

The intestate, Paul Exum, was an employee of defendant in its shops at South Rocky Mount, a man of sound mind, about 34 years old and with no bodily infirmity. On the morning of 1 February, 1907, the intestate was walking south on the main-line track of defendant, going from North Rocky Mount, about a mile, to South Rocky Mount to his work. The regular "shop train" of defendant, used to carry employees at the same hour every morning, had left North Rocky Mount on its regular run for South Rocky Mount and was using the main-line track, going in same direction at from 12 to 15 miles per hour. It ran over the intestate and killed him. At the time of the casualty the intestate was in the full possession of his faculties, walking briskly on the main-line track. There was nothing unusual about his appearance, except that he appeared to plaintiff's witness, Thorp, to be looking down on the track.

There are half-dozen tracks between North and South Rocky

Mount with spaces of 6 feet between them, which spaces are used by pedestrians and bicyclists. The tracks are in constant use by all kinds of trains and engines.

The evidence discloses nothing about the intestate to indicate to the engineer of the shop train other than that he would step off the track at any moment and let him pass.

The intestate was an employee of defendant at its South Rocky Mount shops, and must have been familiar with the constant passage of trains over these tracks, and especially with the schedule of the shop train.

It must be admitted that the intestate was entirely out of his place walking on a main-line track under the circumstances and conditions disclosed by the evidence. He should have used the established walkways between the tracks, as witness Thorp was doing, or else he should have taken the shop train provided by defendant for its employees who resided in North Rocky Mount.

That the intestate was guilty of great carelessness and negligence in failing to use his faculties and keep a vigilant lookout for engines while on the railroad track is established by a multitude of decisions of this Court, over thirty-five in number. *Coleman v. R. R.,* 153 N. C., 325.

In referring to this rule of law in the case of *Cooper v. R. R.,* 140 N. C., 212, *Mr. Justice Hoke* well says: "This rule is so just in itself and so generally enforced as controlling that citation of authority is hardly required."

The rule applies to those who cross the railroad tracks and with equal if not greater force to those who walk up and down them.

It is immaterial whether we consider the intestate in the light of a trespasser or licensee, the same obligation to look, listen, and to exercise vigilance rested upon him.

This Court has held uniformly that "even where it is conceded that one is not a trespasser in using the track as a footway from a foundry to his house, it behooves him to be still more watchful. The license to use does not carry with it the right to obstruct the road and impede the passage of its trains.

EXUM *v*. R. R.

A railroad company has the right to the use of its track, and its servants are justified in assuming that a human being who has the use of all his senses will step off the track before a train reaches him." *McAdoo v. R. R.*, 105 N. C., 153; *Parker v. R. R.*, 86 N. C., 221; *Meredith v. R. R.*, 108 N. C., 616; *Norwood v: R. R.*, 111 N. C., 236; *High v. R. R.*, 112 N. C., 385.

In *Neal v. R. R.*, 126 N. C., 638, this Court said: "If plaintiff's intestate was walking up defendant's road, in open daylight, on a straight piece of road, where he could have seen defendant's train 150 yards, and was run over and injured, he was guilty of negligence; and although the defendant may have been guilty of negligence in running its train at a greater rate of speed than was allowed by the town ordinance, or in not ringing its bell as required by said ordinance, and in not keeping a lookout by its engineer, as it ought to have done, yet the injury would have been attributed to the negligence of plaintiff's intestate."

Speaking of the principle involved in the cases determining the injured party's negligence, the Court says: "According to the principle declared in all of them, the question of liability is not to be solved by any reference to what the defendant may have done or omitted to do, but by the conduct of the plaintiff; and if the latter would not see when he could see, or would not hear when he could hear, and remained on the track in reckless disregard of his own safety, the law adjudges any injuries he may have received to be the result of his own carelessness." *Bessent v. R. R.*, 132 N. C., 940; *Pharr v. R. R.*, 133 N. C., 615, approving *Neal's case* and *Bessent's; Allen v. R. R.*, 141 N. C., 340; *Crenshaw v. R. R.*, 144 N. C., 325; *Royster v. R. R.*, 147 N. C., 347.

In *Syme v. R. R.*, 113 N. C., 558, it is held that "When a person is injured while walking on a railroad track by an engine that he might have seen by looking, the law imputes the injury to his own negligence," and "that the engineer was justified in assuming that the intestate *had looked* and had notice of his approach and would clear the track in ample time to save himself from harm."

In the recent case of *Beach v. R. R.,* 148 N. C., 153, this subject is discussed elaborately by *Mr. Justice Walker* and all the cases cited and reviewed.

The plaintiff seeks to take this case out of the established rule by attempting to prove that the engineer of the shop train could have avoided killing the intestate by exercising reasonable care, and failed to do so. This condition is based upon the testimony of Thorp, who says: "I was between the last western track and the eastern track when I saw Exum, and he was walking along with his head down, walking very brisk, with a tin bucket on his arm." Thorp says he saw the shop train approaching the intestate, and when it was 150 feet from Exum, "I commenced to wave at him and shout. Ran 20 or 25 feet towards him, waving my hat at him and halloaing to him. He seemed to be walking right along and did not notice me. Then I commenced waving train down and pointing at the track. I did not succeed in attracting anybody's attention." Thorp further states that there was nothing between him and Exum, or between him and the train, to obstruct the view.

We fail to see anything in this evidence to take this case out of the rule laid down in the cases cited. It is not even suggested, much less contended, that the engineer purposely and willfully ran down and killed his coemployee. There is no evidence whatever that the engineer actually saw Thorp's signals in time to stop, or that he saw them at all.

But plaintiff contends that it was the engineer's duty to see them. The engineer's duty was to keep a vigilant lookout in front of him, and especially along the track over which he was running. It was no more the duty of the engineer to see Thorp's signals than it was the duty of the intestate. It was as much incumbent upon him to keep a sharp lookout as upon the engineer. In fact, had the engineer seen Thorp's signals, he had a right to assume up to the last moment that the intestate also saw them and that he would step off the track out of harm's way.

The intestate was a sound man, with no apparent infirmity, walking briskly along ahead of a train with the uses and sched-

ule of which he was necessarily familiar. The engineer had every reason to believe that such a man was exercising vigilance and would get out of the way and let him pass.

In this class of cases it will be found generally that where the company has been held liable it is in cases where the party injured was not upon equal chances with the engineer to avoid the injury—where there was something suggesting the injured party's disadvantage or disability, as where the party injured is lying on a railroad track, apparently drunk or asleep, or is on a bridge or trestle, where he cannot escape, or cannot do so without great danger. In such cases, if the engineer saw the party injured, or by proper diligence could have seen him, the company is held liable for the engineer's negligence. *Neal v. R. R.,* 126 N. C., at p. 639. See, also, *Norwood v. R. R.,* 111 N. C., 236; *High v. R. R.,* 112 N. C., 385; *McAdoo v. R. R., supra.*

Assuming, however, that the engineer was negligent as well as the intestate, the negligence of both is concurrent, and, as said *Mr. Justice Allen* in *Harvell v. Lumber Co., ante,* 254: "It is well settled that, when the plaintiff and the defendant are both negligent and the negligence of both concur and continues to the time of the injury, the negligence of the defendant is not in the legal sense proximate."

As lately held by a unanimous Court in *Beach's case, supra,* when a person is injured upon a railroad track, which injury could have been avoided by him by looking and exercising proper vigilance, the negligence of such person in this respect is concurrent, and damages are not by him recoverable on that account.

Upon an unbroken line of authorities we are of opinion his Honor properly sustained the motion to nonsuit.

Affirmed.

HOKE, J., concurring: If it be conceded that the defendant in this case was negligent, I concur in the decision, for the reason that, accepting all of plaintiff's evidence as true, and taking every permissible inference arising on the entire testimony and which makes for his claim, as established, it appears that

when he was killed the intestate was voluntarily walking along the main line of defendant's track, at a time and place where a train might be expected any moment, in broad daylight, in the full possession of his faculties, and with nothing to restrain or hinder his movements, without paying the slightest attention either to his placing or surroundings. There is nothing, therefore, to qualify the obligation that was upon him to be careful of his own safety, and, to my mind, it presents a typical case of contributory negligence, negligence concurring at the very time of the impact, and recovery by plaintiff is therefore properly denied.

CLARK, C. J., dissenting: The plaintiff's intestate was killed by the defendant's engine. The bare fact that the intestate was walking on the track did not, as a matter of law, give the defendant the right to kill him. The Court ought not to hold as a matter of law that killing under such circumstances is necessarily rightful. Whether it is excusable or not is a matter which depends upon the circumstances of the case and is an inference to be drawn by the jury, for, notwithstanding the intestate's negligence (if he was negligent under the circumstances of this case in walking upon the track), if the defendant's engineer with a due regard to human life and by keeping a proper lookout could have avoided killing the deceased, it was incumbent upon the defendant to have done so, and its failure to do so was the proximate cause of the death of plaintiff's intestate.

There are many circumstances in this case which require that the question of proximate cause should have been left to the jury, and that the judge should not by a nonsuit have adjudged that the defendant had a right as a matter of law to kill the deceased. The deceased, an employee of the defendant, on his way from his work, was walking, according to the custom of employees at that place, along the track on his way home. He was walking along with his head down, his back to the engine, and evidently oblivious to its approach. The track was straight and where the deceased was walking was within the town limits of Rocky Mount. The evidence is that the track was

"customarily" used by the employees of the defendant corporation and by the general public as well, without objection, as a walkway between Rocky Mount and South Rocky Mount to the same extent as if it were a public street. The defendant's engine was running at from 12 to 15 miles per hour, an excessive speed within town limits, and though it had passed over many crossing places where street after street crossed the track, it blew no signal at any of them. The train was a shop train and was not running on its regular track. The deceased was walking on the main track on which no train was scheduled to pass at that hour. There was evidence tending to show that a passing freight train on another track prevented the intestate from hearing the approaching train behind him. It was the duty of the engineer to have kept an efficient lookout in front of him, and with proper care he could have seen that the deceased was preoccupied, with his back turned to the approaching engine, and looking down on the track. The engineer knew that this track was customarily used by the public, that the deceased was walking on a track on which no engine was scheduled to pass at that hour, that he himself was running on an unusual track for his engine, and, more than this, his attention was specially called to the fact that the deceased was inadvertent to the approach of his train by the gestures and signal of the witness Thorp, who was walking by the side of that track some 200 feet in front of the engine and facing it, who saw the danger the deceased was in, and who ran forward waving his arms and making signals to the engineer. The engineer should have seen the oblivious condition of the deceased as quickly as Thorp, even if the latter had made no signals. While, ordinarily, an engineer seeing a man walking on the track may expect him to get off when he blows his whistle, here the engineer neither blew the whistle nor rang his bell.

All the above facts combined, together with the excessive speed of the engine, certainly required some action on the part of the engineer. It was not necessary for him to stop his engine, but he should at least have blown his whistle or rung his bell. *Stanley v. R. R.,* 120 N. C., 514, in which it was held

that "a person walking on a railroad track has a right to suppose that the railroad company would take care to provide against injuring pedestrians by the use of proper signals and to feel secure in acting upon that supposition." Had the engineer blown his whistle after he saw Thorp's signals—and he should have seen them, with a proper lookout, when 150 feet from the deceased—the deceased would have been awakened from his reverie and been given notice to step off the track. A human life should be at least worth the trouble of the engineer raising his hand to pull the cord that sounds the whistle. It ought not to be held as a matter of law that in all cases whatever a man forfeits his life by the mere fact that he walks on a railroad track, and that in such cases the railroad company may rightfully kill him, like a rat caught in a box.

It is not contended by the plaintiff that his intestate was entirely without negligence in walking on the track, though to do so at that point was permissive and customary. But, notwithstanding that negligence, if the engineer could have prevented killing the deceased by the exercise of proper care on his part, then the proximate cause was the negligence of the defendant, and the killing of the deceased was not rightful as a matter of law, but was wrongful as a matter both of fact and of law. If the engine had not been running at an excessive speed, if the whistle had been blown at each crossing, if the train had been running on its rightful track, and if the engineer had kept a proper lookout so that he would have seen that the deceased was oblivious to the approach of the engine from the rear, which he could not hear on account of the noise made by the freight train passing on another track, and if he had taken notice of the frantic gestures of the witness Thorp immediately in his front, calling attention to the jeopardy of the deceased, and if under these circumstances a blast of the whistle would have given the deceased notice in time of the approach of the fatal train, then the proximate cause of the death on the actual facts was the negligence of the defendant's engineer. At least, these facts should have been submitted to the jury.

In *Arrowood v. R. R.,* 126 N. C., 630, the Court held that where the public are in the habit of using the railroad track as a passway, then the defendant should exercise greater care, move its trains at a lower speed and keep a keener lookout in front than in going along a straight track in an open country, and that "the amount of care depends upon the circumstances in each case," and sustained the finding that "notwithstanding the negligence of the plaintiff's intestate, the defendant by the exercise of ordinary care should have avoided the killing of the intestate."

In *Edwards v. R. R.,* 129 N. C., 81, it was held that where the train was passing, as here, through a town at an excessive speed, this was evidence of negligence on the part of the defendant and should be submitted to the jury on the issue of proximate cause. In *Fulp v. R. R.,* 120 N. C., 525, the Court held that the failure to sound a whistle at a crossing was evidence of proximate cause where the deceased was killed along the track beyond the crossing. In that case *Furches, J.,* said: "Though the intestate may have been guilty of negligence by going on the defendant's road, whether drunk or sober, it was still the duty of the defendant's engineer to be in his place, on the lookout, and if he saw the intestate or could by due diligence have seen him in time to stop the train and save the life of the intestate, it was his duty to do so, and if he did not, he was guilty of negligence, and the defendant would be liable." He further said that it was error for the judge to charge, "If the intestate's failure to note approaching trains was in whole or in part because he was drunk, and was run over and killed in consequence, this would be contributory negligence, and the jury should answer the second issue Yes." "This puts the whole case upon the intestate's being drunk, and if this charge was sustained, it would be a free license to every railroad company in the State to run over and kill every drunken man that got on its road, whether the conductor saw him or not—a doctrine, it seems to us, too shocking to be insisted upon."

In *Powell v. R. R.,* 125 N. C., 374, it was held, citing *Fulp v. R. R., supra,* and many other cases, that it was negligence

not to sound the whistle at a public crossing when the person killed was on the track and the whistle might have given him notice to get off. That case has been cited by many others since (see Annotated Ed.). In *Morrow v. R. R.,* 147 N. C., 623, *Mr. Justice Walker* held: "The failure of the employees' of a railroad company to give crossing signals at a public crossing does not constitute negligence *per se,* when the injury complained of occurred to a pedestrian by using the track at a different place, but it is only evidence of negligence under certain conditions." If evidence of negligence, it should have been submitted to the jury to say whether it was sufficient under the conditions of this case. This last quotation was cited by *Mr. Justice Hoke,* in *Norris v. R. R.,* 152 N. C., 510, who said: "Where a person is on the track, at a place where people are habitually accustomed to use the same for a walkway, they have a right to rely to some extent and under some conditions upon the signals and warnings to be given by trains at public crossings and other points where such signals are usually and ordinarily required, and failure on the part of the company's agents and employees operating its train to give proper signals at such points is ordinarily evidence of negligence, and where such failure is a proximate cause of an injury it is, under some circumstances, evidence from which actionable negligence may be inferred," citing *Randall v. R. R.,* 104 N. C., 410, where the plaintiff was driving his oxen along the road near the track, and by reason of the whistle not being sounded at the crossing he did not turn out, and the train so frightened his oxen that they got upon the track and were killed.

Upon the authorities, it is clear beyond controversy that the intestate was a licensee and not a trespasser, and though he was guilty of negligence, if those in charge of the train could with proper care have prevented the injury by blowing the signals or by running the train at a moderate speed, the defendant is liable. The matter is fully discussed in *Teakle v. R. R.,* 10 L. R. A. (N. S.), 486, at p. 491, with full citation of authorities, which are thus summed up: "While trainmen are not usually bound to foresee or watch for the wrongful presence

of any person upon the track,'even where it is open to the adjoining highway, yet, as experience has shown that at certain points persons are thus constantly entering upon the track, such persons, if injured as a proximate result of the trainmen's failure to use ordinary care to keep watch for them, may recover damages if the trainmen could have seen them without difficulty, by keeping a reasonable watch, even though in fact they did not see them. Especially should this rule be applied where the railroad company has acquiesced in the use thus made of its property." It is further said that in such cases the duty is "imposed upon the train operatives with respect to observing a reasonable lookout in the direction of the moving train, the extent of which it is not for the court to say, but it is to be determined by the triers of fact under all the circumstances of the case." The citations of authority in this case are very full and the reasoning is convincing and just.

In *Williamson v. R. R.* (Va.), 113 Am. St., 1032, it is held: "If the right of way of a railroad corporation at a particular point has long been in use as a walkway, and this is well known to the company, it is under the duty of using reasonable care to discover, and not to injure, persons whom it might expect to be on its tracks at that point," citing *Blankenship v. R. R.,* 94 Va., 499; *R. R. v. Rogers,* 100 Va., 234.

In *Troy v. R. R.,* 99 N. C., 298, *s. c.,* 6 Am. St., 521, it is held that walking on the track is not in itself such contributory negligence as will bar a recovery of damages for injuries sustained, if the company by reasonable care could have prevented them. To same effect, *Guilford v. R. R., post; R. R. v. Phillips,* 2 Am. St., 155, and note; *R. R. v. Walker,* 3 Am. St., 638; *Hurt v. R. R.,* 4 Am. St., 374; *R. R. v. Watson,* 5 Am. St., 578, and note.

In *Schmidt v. R. R.,* 3 L. R. A. (N. S.), it is said, citing *Harland v. R. R.,* 65 Mo., 22, that notwithstanding the contributory negligence of the intestate, "The company is liable if by the exercise of ordinary care it could have prevented the accident after discovery by defendant of the danger in which the injured party stood, or if the company failed to discover the danger through the recklessness or carelessness of its em-

ployees when in the exercise of proper care they could have
discovered the danger of the intestate and have averted the
calamity."

In *R. R. v. White* (Va.), 10 Am. St., 874, it is held that the
railroad company owes to a licensee on its track ordinary care
and prudence, and that the intestate who was killed while walk-
ing on the track is not barred of recovery if the engineer might
by the exercise of care on his part have avoided the consequences
of the negligence and carelessness on the part of the intestate.
To same effect, *Haggerty v. Wagner* (Ia.), 39 L. R. A., 399;
*Bogan v. R. R.*, 129 N. C., 154; *s. c.*, 55 L. R. A., 418, and notes.
In *Raines v. R. R.* (W. Va.), 24 L. R. A., 226, it is held that
if one is walking along the track apparently in possession of
his faculties the engineer may presume that he will get off the
track, provided due signals are given. To same effect, *R. R. v.
Baker* (Kan.), 21 L. R. A. (N. S.), 427, and notes.

In 2 Thomp. Neg., sec. 1596, it is said that the rule which
requires the railroad to keep a lookout ahead of its trains at
crossings and at places where the track is much used by the
public "is reduced to meaningless verbiage, unless it is followed
up by the corresponding rule that where a person negligently
exposes himself to injuries upon the crossing, the railroad com-
pany will be liable if by the maintenance of a lookout it *might
have discovered the traveler* in his exposed situation in time
by the exercise of reasonable care to have avoided killing or
injuring him." For this proposition numerous cases are cited,
and the author adds: "The cases which hold the contrary seem
to have no counterpart in the jurisprudence of any other Eng-
lish-speaking country, and form a disgraceful chapter in Amer-
ican jurisprudence." The same point is elaborated in the same
volume, secs. 1724, 1725, 1726, 1836, 1837.

There were numerous street crossings of this track and the
track itself was, with the permission of the defendant, custom-
arily used by its employees and the public as a street, accord-
ing to the evidence. Yet the evidence of Thorp is that no
whistle was blown or bell was rung that he heard, and this is
evidence, under our authorities, to go to the jury that there
was none, in the absence of evidence to the contrary. Authori-

ties might be multiplied, but it has never yet been held law, in this State or elsewhere, and cannot now be held with my assent, that the mere fact that one walks upon the railroad track is conclusive evidence that his negligence is the cause of his death, regardless of the surrounding circumstances; and yet such is practically the rule if, under all the circumstances in this case, it is held that the defendant, as a matter of law, had a right to kill the deceased and that by a nonsuit a jury can be deprived of any right to determine whose negligence was the proximate cause of the death.