15914

COX v. ATLANTIC COAST LINE R. CO. *ET AL.*

(41 S. E. (2d) 380)

*Messrs. Wright & Burroughs* and *F. A. Thompson,* all of Conway, and *Messrs. Woods & Woods,* of Marion, for Appellant, cite:

*Messrs. Epps & Epps* and *J. Reuben Long,* all of Conway, for Respondent, cite:

February 14, 1947.

MR. CHIEF JUSTICE BAKER delivered the unanimous opinion of the Court.

The respondent, at the time hereinafter mentioned, was in the employ of the appellant as a painter. He and others in like employment had for several weeks been painting property of appellant at or near Fayetteville, North Carolina, and for "about four or six weeks", the respondent had been staying (sleeping) in one of several shanty cars on the tracks of the appellant's Milan yards, a distance of one and one-half to two miles from its depot proper in Fayetteville.

On Monday morning, January 31, 1944, the respondent suggested to the foreman of the paint crew that he would like to get off from his work for the purpose of going to his home near Conway, S. C., to which the foreman replied that they were then short of workers, and that he needed the respondent to help paint the coal chute, on which job they had been working. However, the foreman further told the respondent to get the cook for the crew and for him and the cook to meet him (the foreman) and another employee who were going for a motor car, at Milan station, and that all of them would then go on the motor car to the depot at Fayet-

teville, and get their pay checks and see who was down there to go to work. This was pay-day for employees of the appellant who were to be paid at Fayetteville, and it was necessary for the foreman of the paint crew to be present and identify the workers in his crew before they could receive their checks or pay.

When the respondent and the cook reached Milan station the foreman and the employee who had accompanied him to get the motor car were not there, so the cook and the respondent then elected to walk on the side of the railroad tracks towards the depot in Fayetteville. For some unexplained reason the respondent had to stop, and was walking alone at the time of the accident from which this case stems. It should also be stated at this time that in going to the depot, the respondent was carrying soiled bedclothes stuffed in a pillow case, and also a suitcase in which he says he had soiled clothes, and that he intended taking all of these clothes to a laundry after being identified for his pay check at the depot. Further, the respondent had been issued a pass on the Saturday before to his home in Conway, and return, and it was customary for these employees to go home on Saturday afternoon and return for work the first of the following week.

There are sixteen tracks in Milan yards but at a point some distance from the place of the accident these tracks converge, or enter upon other tracks of the appellant, and then there are only four tracks. These four tracks cross Ramsey Street in the City of Fayetteville on an overpass bridge, the underpass for vehicular traffic on the paved street being twenty feet below. There is a well defined path on the side of the railroad tracks on which the respondent was walking to the north and south (it is probably more accurate to say to the northeast and southwest) of the overpass trestle or bridge, but there is no walkway across this trestle or overpass bridge provided. There is a ledge on either side about one and one-half feet high and two feet wide on which a person could stand and be out of danger of a slow moving

train on the nearest track to this ledge. And leading from the well beaten path on the side of the railroad track is another path leading to steps going down to said Ramsey Street, at a point a few feet from entering upon the overpass in the direction in which the respondent was walking.

It is unquestioned that the walkway on the side of the railroad tracks where the respondent was walking was used extensively by the appellant's employees from Milan Yards certainly to the path leading to the steps down to the street a few feet from the overpass, and we think it is inferable that there was a well beaten path on the side of the railroad tracks to the south of the overpass, and that employees frequently walked across this trestle or overpass; and so did others not in the employ of the appellant. The respondent was, therefore, on the occasion of his injury, a licensee.

Respondent testified that in walking on the side of the railroad tracks through Milan Yards he passed an engine and tender to which were coupled two cars and a caboose, and that such engine and train of cars were standing still and the train crew was on the ground; that shortly before entering upon the overpass he heard a train blow, whereupon he looked around and the same train was yet standing still where he had passed it, and that not hearing the noise of a moving train and no warning signals at any time, without again looking back, he entered upon the overpass (except he refers to going upon the underpass) and that when he reached a point about ten feet thereon he was struck by the same train which he had passed in the yards, it being manned by the same crew, and precipitated into the street twenty feet below, suffering grievous injuries which he detailed.

This accident occurred about 8:30 o'clock on the morning of January 31, 1944, on a reasonably clear day, and when the respondent could have undoubtedly seen this train approaching for a minimum of one-fourth mile and probably for a much greater distance if he had taken the precaution to turn and look before entering upon the overpass. Except

upon the overpass, the respondent would have been safe in walking on the side of the railroad tracks in the beaten path unless a train had approached and passed him at such speed as to suck him against or under the train.

At the conclusion of the testimony for the plaintiff-respondent, the appellant moved for a nonsuit, which motion was refused, and later after putting up its evidence moved for a directed verdict, which motion was likewise refused. Having in mind the rule that even if it was error to refuse the motion for a nonsuit, the same is cured if the evidence as a whole warranted the refusal of the motion for a directed verdict, and the exceptions of the appellant relating to both motions, we think it advisable to refer to the applicable portions of the defendant's testimony, of course, without going into many of the detail contradictions of the respondent's testimony. But before stating the relevant testimony of the appellant, it should be mentioned that the respondent's complaint alleges that the engine attached to the train of cars hit him "as he was approaching the point where the tracks overpassed a paved street", whereas upon the trial of the case, he testified that, "I got maybe ten feet on the underpass over the street, when the train struck me".

Due to a curve in the track and the length of the boiler, the engineer of the train (who was also made a defendant) could not see the respondent walking on the pathway beside the railroad tracks nor when he entered upon the overpass as he occupied the seat to the right of the cab of the engine, but sitting to the left side and keeping a lookout were the brakeman and fireman of the train crew. This was a heavily loaded train and was traveling an upgrade, and therefore the engine was making a great deal of noise and moving at a rate of speed of between six and seven miles per hour. When the train reached a short distance from the overpass, and upon being alerted by the brakeman and fireman, by word of mouth and the warning signal—double short blasts of the whistle—the engineer applied the emergency brakes and the front of the locomotive was stopped close to the opposite side of the overpass or underpass.

The fireman and the brakeman saw the respondent walking the path on the side of the railroad tracks, traveling in the same direction as was the train, for a considerable distance, having in one hand a white bag which was over his shoulder and in his other hand a suitcase, but both of them had every reason to believe that the respondent was aware of the slowly approaching train, and that he intended to either enter upon the path leading away from the tracks and to the steps going down to the street from the overpass or step aside for the train to pass. The brakeman described it in the following language: "Well, as Mr. Cox was going on to the underpass, I was sitting on the engine, just watching him. He was walking along and as he neared the underpass there is a little footpath that turns off when you get to the underpass, turns to the left and goes down to the steps, so I was looking for him to take that path but all of a sudden he kept right straight on between this 'butting block', I call it and the railroad, right straight on in front of the engine and as he walked in front of that going over the underpass is when I noticed he was doing that and I hollered to the engineer, 'there is a man on the track', and I blew the whistle. There is a cord for the fireman to pull on my side, I grabbed it and blew it two or three times and Mr. Cox jumped on that piece—I can show you that piece of concrete—he jumped on top of it and fell off all at once. The engine hadn't gotten to him". We also quote from the testimony of Mr. L. W. Lanning, the fireman: "A. Well, when I first saw him he looked back, turned his head and looked back to the right and I felt sure—well, he was safe where he was walking at that time and I felt sure that he heard the engine coming. Q. Did you see his face when he looked back? A. Just the side of his face. Q. Suppose you tell what happened as you got to the underpass and how Mr. Cox came to get in the street? A. Just before the front of the engine reached the underpass there—there is a little path near the bridge, he was right at that path and I felt sure he was going to take that path and he was safe where he was but

whenever he stepped in between there, that abutment, on this rock in between there and the brakeman, Bill Slater, pulled the whistle and hollered at the engineer, the whistle seemed to startle him and he stepped upon that abutment and in turning with that bag on his back he seemed to get overbalanced and fell off. The bag went over with Mr. Cox, the bag was in the road with Mr. Cox and the suitcase was up on that cement ledge".

The respondent, and the fireman and brakeman on the train were the only witnesses testifying as to what occurred immediately prior to and at the time the respondent either fell, jumped or was otherwise precipitated to the paved street below the overpass, as a result of which his injuries were sustained.

The appellant's answer pleaded that the injuries to the respondent having occurred in the State of North Carolina, the rights and duties of the parties were fixed and controlled by the law of that State; and properly pleaded the rules of law existing in North Carolina governing the rights and duties of the parties to this action under the circumstances.

In line with its defense, the appellant was permitted, without objection (the respondent conceding that the law of North Carolina governed), to introduce in evidence the opinions of the Supreme Court of said State in *Ward v. Atlantic Coast Line Railroad Co.,* 167 N. C. 148; 83 S. E. 326; and *Redmon v. Southern Railway Co.,* 195 N. C. 764; 143 S. E. 829. A careful study of these cases convinces us that the governing law of North Carolina was at the time of the accident here involved and at the time of the trial of this case precisely as alleged in the answer of the appellant, to wit: (1) A railroad track is intended for the running and operation of trains and not for a walkway; (2) The use of a railroad track as a footway within itself is attended with great danger, and the situation is a constant warning to the pedestrian to take care of himself and to look out for his own safety; (3) A person using a railroad track

as a walkway must carefully look and listen in both directions for approaching trains, and an engineer (and the other members of the crew) on a train advancing towards him, if he is apparently in the possession of his senses, has the right to assume that he has performed (or will perform) this duty to himself even until it is too late to save him from injury; (4) The pedestrian is bound to look and listen while using the railroad track as a footway, and to be on the alert while doing so in order to avoid an approaching train and not to walk carelessly in a place of possible danger; (5) The pedestrian must use his senses in order to hear or see an approaching train, and if he omits to do so, and continues to walk on the railroad track, he is guilty of such culpable negligence and disregard for his own safety as to deprive him of any cause of action in the event of his injury by an approaching train; and (6) The engineer is not required to stop his train or even slacken its speed, for the reason that he may assume until the very moment of impact that the pedestrian will use his faculties for his own protection and leave the track in time to avoid injury.

The facts in the case of *Ward v. Atlantic Coast Line Railroad Co., supra,* were much more favorable to the plaintiff, whose intestate was using the tracks of the defendant company as a licensee, because in that case there was involved more than one train, the plaintiff's intestate had his attention diverted by the noise from another train and the engine and tender of the train which caused his death were being backed on a side or pass track without ringing the bell or sounding the whistle and without a lookout on the tender, and making practically no noise; and we infer that the intestate was walking upon the track and not to the side thereof. Yet the majority opinion (a dissenting opinion was written by the then Chief Justice) held that there was no evidence of negligence on the part of the defendant company and that the proximate cause of the plaintiff's intestate was his sole negligence in not keeping a proper lookout for his own safety.

In that a decision of this case is governed by the law of North Carolina we quote below rather extensively from the *Ward case*:

"* * * Even where it is conceded that one is not a trespasser, as in our case, in using the track as a footway, but has implied license, by reason of a custom in the neighborhood to so use it, it behooves him to be still more watchful. The license to use does not carry with it the right to obstruct the road and impede the passage of trains. A railroad company has the right to the exclusive occupancy of its track, and especially so when running its trains thereon, and its servants are justified in assuming that a human being, either a trespasser or one walking on it by implied license, who has the use of all his senses will step off a track before the train reaches him. This was said by Justice Avery in *McAdoo's case,* 105 N. C. 140, 11 S. E. 316, and is well sustained by the authorities cited therein, *viz., Bullock v. Railroad Co.,* 105 N. C. 180, 10 S. E. 988; 2 Wood on Railroads, Section 333; *Parker v. Railroad Co.,* 86 N. C. 221; 2 Wood on Railroads, Section 320. A court of the highest authority has declared that, under such circumstances as those mentioned in the *McAdoo case,* the track, as it seems necessary to repeat with emphasis, is itself a warning to those who may choose to use it as a walkway, even if it is customary for the people in the neighborhood to do so. It is a place of danger and a signal to all on it to look out for trains. It can never be assumed that trains are not on a track, and that there can be no risk to pedestrians from them. But the same has so often been the utterance of this court that the doctrine has become deeply imbedded in our jurisprudence, and is so just in itself and essential to the public convenience and safety that it would be most unwise to abrogate or even modify it. Public policy and common sense and ordinary prudence alike forbid such a course. The facts of this particular case bring it squarely within the control of that principle, and they so clearly·point to the unfortunate negligence of the intestate as the active, direct, and efficient

cause of his death that it would be a hopeless task even to attempt to differentiate it from those cases which have gone before it, and in which we have held, without variableness or the shadow of turning, that there is no negligence to be imputed to the railroad, but all of it is that of the party killed or injured while walking on a track, 'in the broad and open day, in front of an approaching train or engine'. We have said the precedents are numerous and this partial array of them will prove it. *McAdoo v. Railroad, supra; Parker v. Railroad,* 86 N. C. 221; *Meredith v. Railroad,* 108 N. C. 616, 13 S. E. 137; *Norwood v. Railroad,* 111 N. C. 236, 16 S. E. 4; *High v. Railroad,* 112 N. C. 385, 17 S. E. 79; *Syme v. Railroad,* 113 N. C. 538, 18 S. E. 114; *Bessent v. Railroad,* 132 N. C. 934, 44 S. E. 648; *Stewart v. Railroad,* 128 N. C. 518, 39 S. E. 51; *Wycoff v. Railroad,* 126 N. C. 1152, 37 S. E. 999; *Sheldon v. Asheville,* 119 N. C. 606, 25 S. E. 781; *Beach v. Railroad,* 148 N. C. 153, 61 S. E. 664; *Lea v. Railroad,* 129 N. C. 459, 40 S. E. 212. All of these cases have so thoroughly established the principle upon facts substantially identical with those in this record that it would seem to be doing something more than our duty or necessity requires to reiterate the doctrine.

"In *High's case, supra,* an important case on this subject, which has been approved repeatedly, since it was decided, by a unanimous court, it appeared that a woman wearing a long poke bonnet, which totally obstructed her vision, was walking on a side track, supposing that the approaching train would take the main track, 'as they usually did', but it so happened that on the particular occasion it did not, but used the side track, and it was held to be clear that she could not recover, as she had no right to speculate on the course the engine would take. This is what the court said with reference to the facts, which are in every essential respect like those we have here:

" 'If the plaintiff had looked and listened for approaching trains, as a person using a track for a footway should in the exercise of ordinary care always do, she would have seen

that the train, contrary to the usual custom, was moving on the siding. The fact that it was a windy day, and that she was wearing a bonnet, or that the train was late, gave her no greater privilege than she would otherwise have enjoyed as licensee, but on the contrary, should have made her more watchful. * * * There was nothing in the conduct or condition of the plaintiff that imposed upon the engineer, in determining what course he should pursue, the duty of departing from the usual rule that the servant of a company is warranted in expecting licensees or trespassers, apparently sound in mind and body and in possession of their senses, to leave the track till it is too late to prevent a collision' (citing *Meredith v. Railroad,* 108 N. C. 616, 13 S. E. 137; *Norwood v. Railroad,* 111 N. C. 236, 16 S. E. 4).

"And those cases fully sustain the correctness of the proposition. Referring to this passage from *High's case* in the recent case of *Abernathy v. Railroad Co.,* 164 N. C. 91, 80 S. E. 421, this court unanimously said that the law was there correctly stated, and that both the *Meredith* and *High cases* hold that a pedestrian, when on the track, is under the absolute duty to look and listen, if he can see and hear, exercising both senses for that purpose, and that the rule is not, in the least, modified by the fact of its being a side track instead of the main line, and it was added that the public could not be safely and adequately served upon any other principle. If engineers must stop their trains to await the pleasure or convenience of foot passengers in leaving its tracks, when they can step off so easily and avoid injury and not obstruct or retard the passage of trains, the company cannot well perform its public duty as a carrier, and the public convenience, though superior and of prior right, must give way to private interests, contrary to the just maxim of the law.

"This court held in *Norwood's case,* 111 N. C. 236, 16 S. E. 4, that it was immaterial whether the intestate went upon the track under a license or as a trespasser, and that if he was apparently in possession of his faculties, and not

known to be incapable of taking care of himself, the engineer had the right to assume, up to the very last moment, when it is too late for him to save him, that he will leave the track and save himself.

"No court, perhaps, has expressed itself in more certain and unmistakable terms upon this subject than this one, and with more unanimity. The principle has been often announced, and applied to facts not essentially different from those in this case, that where a person on the track as a trespasser or licensee, is apparently in possession of his senses and faculties, so that he can either hear or see a train, he must listen, and if he cannot hear he must look, for the approach of trains, and his failure to do so is negligence on his part, which, at least concurs, up to the very time of the injury with that of the defendant, the railway company, if there be any negligence on its part, and he must be considered in law, and, we add, by every rule of justice, common fairness, and common sense, to have brought disaster upon himself, if he is injured and killed. The rule, as stated in our decisions, and we restate and approve it now, is not one peculiar to this court. It has been generally, if not universally, adopted by other courts, and is thus epitomized by an eminent author:

" 'The company's employees may presume that one who is apparently able to do so will get off the track in time to avoid injury to himself'. 3 Elliott on Railroads, Section 1257a.

"See, also, *Matthews v. Railroad Co.,* 117 N. C. 640, 23 S. E. 177; *McArver v. Railroad Co.,* 129 N. C. 380, 40 S. E. 94; *Clegg v. Railroad Co.,* 133 N. C. 303, 45 S. E. 657; *Pharr v. Railroad Co.,* 133 N. C. 610, 45 S. E. 1021. In *McArver's case, supra,* the court held:

" 'If the intestate was sitting upright with his back to the cross-ties, or in any other attitude which did not make it apparent to the engineer that he was in a helpless condition and in danger of being stricken by the train, then the engi-

neer could have assumed up to the last moment that he would have gotten out of danger, and the engineer was not bound to either stop his train or slacken its speed, or give him notice by bell or whistle. A lookout by the engineer for such a person in such a position is not required by the law'.

"And in the *Matthews case, supra,* it was said by the Chief Justice:

" 'If the defendant was negligent in not giving a signal, the act of plaintiff was much greater carelessness and was the immediate cause of the injury, and he cannot be excused for such disregard of his personal safety'.

"He should have carefully looked and listened for trains, and the engineer had the right to presume that he had done so, and, having failed to do so, his own negligence is regarded as the proximate cause of his injury, citing *Parker v. Railroad Co.,* 86 N. C. 221, and *High v. Railroad Co., supra.*

"The case of *Neal v. Railroad Co.,* 126 N. C. 634, 36 S. E. 117, 49 L. R. A. 684, is worthy of careful notice in this connection for it meets the plaintiff's contention at every point, where it is not overthrown by the long line of cases already cited. It was there said that if a person is walking on a railroad track in open daylight, and has an unobstructed view of an approaching train, and was nevertheless run over and injured, he is guilty of such negligence as deprives him of the right to recover damages, and this is so even though an ordinance of a town, as to the train's rate of speed, was being violated at the time, or the bell was not rung as required by the ordinance, or a lookout was not kept by the engineer or fireman, the injury being referred by the law to the plaintiff's own negligence as its proximate cause, citing *McAdoo's case, Syme's case, Meredith's case, Norwood's case, High's case,* all *supra*."

We think that the foregoing is conclusive that under the law of the place of injury, there is no evidence of negligence on the part of the appellant and that the

sole negligence of the respondent was the proximate cause of his injury. Even the "last clear chance doctrine" which obtains in North Carolina cannot bring comfort to the respondent since under the case of *Redmon v. Southern Railway Co., supra,* this doctrine does not apply to a licensee upon the tracks of a railroad, who, at the time, is in apparent possession of his strength and faculties, the engineer of the train producing the injury, having no information to the contrary.

In the instant case, the respondent was in possession of his strength and of his seeing and hearing faculties, which if he had exercised to the slightest degree, he would not have been injured.

There is no preferred class of licensees in the use of a railroad's tracks, even as to travelers over public railroad crossings. While the traveler and the railroad have equal rights to the use of such public crossing, "the traveler must yield the right-of-way to the railroad company in the ordinary course of the latter's business". *Johnson v. Railroad,* 163 N. C. 431, 79 S. E. 690, citing *Duffy v. Railroad,* 144 N. C. 26, 56 S. E. 557; and cited and quoted with approval in *Redmon v. Southern Railway Co., supra.* Therefore, the fact that the respondent was an employee of the appellant, and accepting as true that he was en route to be identified and receive his pay at the depot in Fayetteville, did not relieve him from the obligations imposed by the law to exercise his faculties for his protection. If the respondent had exercised ordinary care, he would have stopped and looked back before entering upon the overpass, and would have necessarily seen the approaching train.

Having concluded that the negligence of the respondent was the sole and proximate cause of his injury it is unnecessary to discuss the other exceptions of the appellant.

As was stated in *Crenshaw v. Railroad Co.,* 144 N. C. 316, 56 S. E. 945: "As much as we deplore the unfortunate accident which has befallen the plaintiff, we are not permitted to relax those rules of the law which must be applied

inflexibly and impartially to all cases coming within the principles they have established. 'It is impossible', said a learned and just judge, 'to consider the plaintiff's injuries without a feeling of profound sympathy. * * * sympathy, although one of the noblest sentiments of our nature * * * has no proper place in the administration of the law.' "

For the reasons herein stated, the judgment appealed from is reversed, and the case is remanded to the Court of Common Pleas for Horry County with instructions to enter judgment for the appellant.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, TAYLOR and OXNER concur.