WALKER, J., dissenting; BROWN, J., concurring in the dissenting opinion.
Action to recover damages for alleged negligent killing of plaintiff's intestate. At the close of testimony, on motion, there was judgment of nonsuit. Plaintiff excepted and appealed.
There was evidence on the part of plaintiff tending (569) to show that on 22 April, 1912, the intestate, living about one mile south of Pelham, a station on the Southern Railway, started to that place to mail a letter. That defendant company had two tracks at Pelham running practically north and south, a main track and a siding or pass track, the main track being on the east or right side going north. That there was a walkway along the right of the main track, there being a low fill there, and pedestrains [pedestrians] in that vicinity going to Pelham were accustomed to use this walkway and also the main and side tracks, particularly in rainy weather; that it was about the schedule time for the arrival of No 44, a passenger train going north, and the train had given the station signal some distance out when intestate, who had been walking along the path with a raised umbrella over him, it being then raining, was seen to cross the main track and continue his way along the side or pass track, when the train entered on the siding at a speed of from 40 to 50 miles an hour and ran over and killed him.
D. O. Ledbetter, a telegraph operator whose office was in the blockhouse of the company, testified that this train was not "due to go on the side-track" at that place, and had never done so in the six or seven years *Page 458 
that the witness had been employed at that station. It was also admitted on the argument that the intestate was aware of the schedule time of this train and of the custom not to take the siding. There was also evidence tending to show that the switch lock had been tampered with and the switch wrongfully thrown or changed in some way, and that the signal target gave indications of this to the approaching train by showing the red signals, and they could have been seen by the engineer for 300 or 400 feet before reaching the switch, and it was 1,028 feet from the switch to the point on the siding where the intestate was struck and killed. That if the intestate had looked around, he could have seen when the train entered the siding.
(570) There seems to have been no direct evidence on plaintiff's part as to the distance within which this train could have been stopped. A witness for defendant testified that the train was not going over 40 miles an hour, which was about the schedule time for that place, and he did not think it could have been stopped under 1,000 feet. There was evidence on the part of the defendant that the train in question was going 50 to 60 miles an hour, and making up some lost time. That the engineer on seeing the red lights at the switch, which he did some 200 feet back, immediately put on the emergency brakes and did what he could to get the train under control, and that under conditions presented, "a stop in 2,000 feet would have been a good one."
This evidence, however, coming from defendant's witnesses, in so far as it tends to excuse the company, may not be allowed effect in the present appeal, and under the well established rule that only the evidence tending to support the plaintiff's claim may be considered, we are of opinion that the cause should have been submitted to the jury.
True, we have held in many well considered cases that the engineer of a moving train who sees, on the track ahead, a pedestrian who is alive and in the apparent possession of his strength and faculties, the engineer not having information to the contrary, is not required to stop his train or even slacken its speed because of such person's presence on the track. Under the conditions suggested, the engineer may act on the assumption that the pedestrian will use his faculties for his own protection and will leave the track in time to save himself from injury. But this is ordinarily where the person ahead is on the same track and the conditions call for alertness or attention on his part, as in Exum v. R. R., 154 N.C. 408, and in Beachv. R. R., 148 N.C. 153; and neither the decisions in question nor the principle on which they rest necessarily apply when, as in this case, a regular passenger train, scheduled to the contrary and by reason of a defective switch, unexpectedly runs at a high rate of speed onto a siding where people of the vicinity have been accustomed to walk and a collision of some kind is not unlikely to occur. *Page 459 
These conditions, if established, call for a different ruling, (571) and in such case the issue as to the defendant's conduct must be referred to the jury on the question whether there has been negligence on the part of the company or its employees in regard to the defective switch or in the failure to get the train sooner under control, and whether such negligence, if it existed, was the proximate cause of the injury complained of.
And in reference to the conduct of the intestate usually considered and passed upon on the issue as to contributory negligence, while it has been repeatedly held with us that a pedestrian on a railroad track is required to look and listen and be properly attentive to his own safety, and if injured by reason of negligent default in this respect, recovery is barred on account of his own negligent conduct, it is also well recognized that the position does not always nor universally obtain as a conclusion of law, and that the obligation to look and listen, etc., may be so qualified by facts and attendant circumstances that the question of contributory negligence must also be referred to the jury, a principle applied by the Court in Hammett v. R. R., 157 N.C. 322; Snipes v. Manufacturing Co.,152 N.C. 42; Farris v. R. R., 151 N.C. 483; Hudson v. R. R., 142 N.C. 198;Ray v. R. R., 141 N.C. 84; Sherrill v. R. R., 140 N.C. 252;Lassiter v. R. R., 133 N.C. 244; Purnell v. R. R., 122 N.C. 832; Stanlyv. R. R., 120 N.C. 514.
In Ray's case the plaintiff, who had alighted from a train, was going across the railroad yard towards the depot, walking between the tracks. Seeing another train approaching from an opposite direction, to avoid a collision, he stepped onto a parallel track and was struck by a train negligently backing into the yard, the one on which he had come. Held, a question of contributory negligence for the jury.
In Sherrill v. R. R., supra, plaintiff was superintending the construction of a depot where two roads crossed, and was standing on the track of one road overlooking the work. At the time he took this position there was a train of the other road on the crossing some distance away. While plaintiff stood there, the train having passed out, he was run on and injured by a train of this road which had approached without signal or other warning. The court decided that the cause was one for the jury, and in this connection it was held: (572)
"1. One who enters on a public railroad crossing is required to look and listen, and when he fails in this duty and is injured in consequence, the view being unobstructed, under ordinary conditions such person is guilty of contributory negligence."
"2. Negligence having first been established, facts and attendant circumstances may so qualify the obligation to look and listen as to require *Page 460 
the question of contributory negligence to be submitted to the jury, and in some instances the obligation to look and listen may be altogether removed."
In Lassiter v. R. R., a railroad conductor standing on a track engaged in giving instructions as to the movements of his train was run over and killed by another train backing on him without keeping a proper lookout. The cause was held one for the jury.
In Stanly v. R. R., referred to with approval in Hammett's case, supra, the Court among other things held as follows: "A person walking on a railroad track is not bound to be on the look out for a danger which he has no reasonable ground to apprehend, and has a right to suppose that the railroad company will take care to provide against injuring pedestrians by the use of proper lights and signals."
In the decisions cited and chiefly relied on by defendant, the Court was of opinion that there was no fact in evidence tending to legally qualify the obligation of the injured party to properly care for his own safety, and recovery was denied on the ground of his own negligence, existent and concurring at the very time of the collision.
Thus in Exum's and Beach's cases the intestate was killed when they were on the main track of a trunk railroad about the schedule time for a passenger train. The conditions called for alert attention and to the very time of the occurrence, and claimants were held guilty of contributory negligence.
In High v. R. R., 112 N.C. 385, the plaintiff was on a siding when injured, but the freight train was approaching on the main track at a very slow rate of speed, and there was nothing to suggest or indicate to plaintiff that it would not enter on the siding; the evidence, too, (573) seems to establish that there was a passenger train also at the station at this time, making it probable that one or the other would take the siding.
In Meredith v. R. R., also, 108 N.C. 616, the plaintiff was injured on a side-track, but it was by a train moving in the same direction and on same track as plaintiff, and which he had just passed.
In Tull v. R. R., 151 N.C. 545, and McAdoo v. R. R., 105 N.C. 150, and seemingly in Neal v. R. R., 126 N.C. 634, the persons injured or killed were on or near the railroad yards and were run into by switching engines moving back and forth where conditions called for constant attention, and where, as stated, there was nothing to legally qualify the obligation on the claimant to be continuously careful for his own safety.
But none of these cases should be allowed as controlling on the facts presented on this appeal, where the intestate was killed by a regular train whose schedule was fully known, which was not expecting to go on the side-track and had not done so for six or seven years, nor *Page 461 
apparently intended to make any stop at the station, and when the intestate on hearing the signal for the station passed over onto this side-track and continued on his way to the station.
On the facts in evidence, we are of opinion that the cause is one coming under the first line of cases to which we have referred, and the issue as to plaintiff's conduct should also be submitted to the jury on the question whether plaintiff was guilty of contributory negligence in failing to observe and note the approach of the train under all the facts and attendant circumstances as they may be shown to have existed at the time.
There was error in the order of nonsuit, and the same will be set aside.
Reversed.