After stating the case: We have repeatedly held, since McAdoo v. R. R. (105 N.C. 140) was decided in 1890, nearly a quarter of a century ago, that a person walking along the track of a railroad company must look and listen for approaching trains and take care of himself, and the engineer has the right to assume that he has done so and will leave the track in time to avoid any injury to himself, and having the right to act upon this assumption, he is not guilty of negligence in failing to give signals to the pedestrian. If any injury results to the latter, the law imputes it to his own negligence in not using proper caution for his own safety. We believe this to be a correct statement of the law applicable to such cases, and the one approved by McAdoo's case, as will appear from the following language of Justice Avery:
"When a person is about to cross the track of a railroad, even at a regular crossing, it is his duty to examine and see that no train is approaching before venturing upon it, and he is negligent when he can, by looking along the track, see a moving train, which, in his attempt to blindly pass across the road, injures him. Bullock v. R. R., post, 180; 2 Wood R. R., sec. 333. Even where it is conceded that one is not a trespasser, as in our case, in using the track as a footway from a foundry to his house, it behooves him to be still more watchful. The license to use does not carry with it the right to obstruct the road and impede the passage of trains. A railroad company has the right to the use of its track, and its servants are justified in assuming that a human being who has the use of all his senses will step off the track before a train reaches him. Wharton on Negligence, sec. 389a; Parker (94)v. R. R., 86 N.C. 321; 2 Wood R. R., sec. 320."
The same doctrine has recently been stated by this Court in its latest opinion upon this question, by Justice Hoke: "We have held in many well considered cases that the engineer of a moving train who sees, on the track ahead, a pedestrian who is alive and in the apparent possession of his strength and faculties, the engineer not having information to the contrary, is not required to stop his train or even slacken its speed because of such person's presence on the track. Under the conditions suggested, the engineer may act on the assumption that the pedestrian will use his faculties for his own protection and will leave the track in time to save himself from injury." Talley v. R. R., 163 N.C. 567, citing Beachv. R. R., 148 N.C. 153; Exum v. R. R., 154 N.C. 408.
There may be circumstances where the otherwise absolute duty on the part of the track walker to look and listen and to keep constantly on the lookout for approaching trains may be qualified by circumstances, but they are not present in this case. Here the deceased, and his walking companion who testified in the cause, had notice of the invariable *Page 76 
custom that trains passed at that point, and they were in full view of a train "headed east," then standing at the station and waiting for the coming train to take the inner side-track (which they, for their own convenience, were using for a footway), in order that it might proceed by the main track on its journey. The approaching train gave every possible warning; it blew for the station (a single long blow) and for the "place to meet and pass" (two short, sharp blows). Other persons similarly situated to the intestate and Hodge heard these blows and knew the train was coming to the pass-track. The switch, which they had passed by, was set for the siding, so that the train bound west could enter upon it and wait for the one "headed east" to pass it. It was, therefore, a live track and a place of danger, and they looked not, neither did they listen, according to plaintiff's witness Cannon. The (95) engineer was so sure that they knew of his approach that he did not again blow the whistle until it was too late, and in this, by all our cases, he was in no fault. If it was even negligence at all, it was not a culpable act of negligence. This track was being used by the railroad company every day for the passing of its trains. They were on time, and the moment for their passing had arrived. A court of the highest authority has said that under such circumstances "the track itself, as it seems necessary to repeat with emphasis, is itself a warning. It is a place of danger, and a signal to all on it to look out for trains. It can never be assumed that trains are not coming on a track and that there can be no risk to the pedestrian from them." But the same has been so often the utterance of this Court that the doctrine has become deeply imbedded in our jurisprudence. The facts of this particular case bring it squarely within it, and they so clearly point to the unfortunate negligence of the intestate as the active and efficient cause of his death — and this includes his companion as well — that it is impossible to distinguish it from the many cases decided here upon the same principle, such as McAdoo v. R. R., supra; Parker v. R. R., 86 N.C. 221; Meredithv. R. R., 108 N.C. 616; Norwood v. R. R., 111 N.C. 236; High v.R. R., 112 N.C. 385; Syme v. R. R., 113 N.C. 538; Bessent v. R. R.,132 N.C. 934; Stewart v. R. R., 128 N.C. 518; Wycoff v. R. R.,126 N.C. 1152; Sheldon v. Asheville, 119 N.C. 606; Beach v. R. R.,148 N.C. 153; Lea v. R. R., 129 N.C. 459. We said in Beach's case that "a railroad track is intended for the running and operation of trains, and not for a walkway, and the company owning the track has the right, unless it has in some way restricted that right, to the full and unimpeded use of it. The public have rights as well as the individual, and usually the former are considered superior to the latter. That private convenience must yield to the public good and public accommodation is an *Page 77 
ancient maxim of the law. If we should for a moment listen with favor to the argument and eventually establish the principle that an engineer must stop or even slacken his speed until it may suit the convenience of a trespasser on the track to get off, the operation (96) of railroads would be seriously retarded, if not practically impossible, and the injury to the public might be incalculable. The prior right to the use of the track is in the railway as between it and a trespasser who is apparently in possession of his senses and easily able to step off the track."
It appeared in High v. R. R., supra, a leading case on this subject, which has been approved repeatedly, that a woman wearing a long poke-bonnet, which totally obstructed her vision, was walking on a side-track, supposing that the approaching train would take the main track, "as they usually did," but it so happened that on the particular occasion it did not, but used the side-track, and it was held to be clear that she could not recover, as she had no right to speculate on the course the engine would take. This is what the Court said with reference to the facts, which are in every essential respect like those we have here: "If the plaintiff had looked and listened for approaching trains, as a person using a track for a footway should in the exercise of ordinary care always do, she would have seen that the train, contrary to the usualcustom, was moving on the siding. The fact that it was a windy day and that she was wearing a bonnet, or that the train was late, gave her no greater privilege than she would otherwise have enjoyed as licensee; but, on the contrary, should have made her more watchful. There was nothing in the conduct or condition of the plaintiff that imposed upon the engineer, in determining what course he should pursue, the duty of departing from the usual rule that the servant of a company is warranted in expecting licensees or trespassers, apparently sound in mind and body and in possession of their senses, to leave the track, till it is too late to prevent a collision," citing Meredith v. R.R., 108 N.C. 616; Norwood v. R. R., 111 N.C. 236. And those cases fully sustain the correctness of the proposition. They both hold that when on the track, the absolute duty of the pedestrian is to look and listen, if he can see and hear, and it is not at all modified by the fact of its being a side-track, instead of the main line. The public could not be safely and adequately served upon any other principle. (97) If engineers must stop their trains to await the pleasure or convenience of foot passengers in leaving its tracks, when they can step off so easily and avoid injury and not obstruct or retard the passage of trains, the company cannot well perform its public duty as a carrier, *Page 78 
and the public convenience, though superior and of prior right, must give way to private interests, contrary to the just maxim of the law.
In Meredith's case the party injured was on the side-track, and not expecting the train to run on that track, but on another. In this connection let it be said that the same principle applies to trespassers and licensees. It was said in Meredith's case: "Actual or implied license from the railroad company to use the track as a footway would not relieve him from the consequences of failing to exercise ordinary care. The license to use the track does not carry with it the right to obstruct the road and impede the passage of trains," citing McAdoo v. R. R.,105 N.C. 140. We may also remark that all of those cases hold that the speed of the train can make no difference, because the pedestrian, if he exercises due care, can escape danger as well in the one as in the other. High v. R. R. and McAdoo v. R. R., supra. But Glenn v. R. R.,128 N.C. 184, is also decisive of the question. It is another case where the plaintiff stepped from one track to a side-track, thinking that he was safe there, as the train would not run on that track, and therefore he turned his back to the approaching train, which he knew was coming, as he heard its whistle, and did not look or listen. Held, that he could not recover. This Court unanimously said: "The railroad track itself was a warning of danger, made imminent by the approaching train. It was then his duty to keep his `wits' about him and to use them for his own safety. He knew or ought to have known that he was a trespasser, and it was his duty to have gotten out of the way of the train. The defendant was under no obligation to stop its train at the sight of a man on its track." The Court further said that it was apparent to the engineer that the plaintiff was in full possession of his faculties and could take care of himself, and the engineer had the right to (98) presume that he would leave the track in time to avoid the injury. "That he did not do so was his own fault, and he should suffer the consequences of his folly." The doctrine of the cases already cited and decided in this Court has been firm established in other jurisdictions, and notably in R. R. v. Houston, 95 U.S. 697, where it is said that a person using the track of a railroad company must look and listen, and any failure to do so will deprive him of all right to recover for any injury caused thereby. "A party cannot walk carelessly into a place of danger," said the Court in that case. See also R. R. v. Hart,87 Ill. 529; Morgan v. R. R., 116 C.C.A. (196 Fed., 449); Kinnare v.R. R., 57 Ill. 153; White v. R. R., 73 N.Y. Suppl., 827; Smith v. R. R.,141 Ind. 92; Boyd v. R. R., 50 Wn. 619; Rich v. R. R.,31 Ind. App., 10.
This case is stronger for defendant than any of those last cited, *Page 79 
because here the intestate and his friend knew that the train was waiting at the station and that the trains passed at that point, this being the schedule time. They were, therefore, in just as much danger as if they had been on the main track. It is almost incredible that men will take so many chances under such circumstances. The cases in our courts also hold that neither the fact of an engine being on the south siding and exhausting steam, nor the speed of the oncoming train, which was not, in this case, at all excessive, can make any difference. Syme,McAdoo, and High cases, and R. R. v. Houston, supra. The diagram accompanying the case would indicate that the speed of the train was slow. It was their plain duty, both by law and the instinct of self-preservation, not only to listen, but to look for the train, and they would have seen and heard it, if they had done so, as it was seen and heard by others in no better position for that purpose than they were; and yet plaintiff's witness, S.W. Cannon, says they did not do so, but walked along the track regardless of their personal safety. R. J. Hodges testified that if they had known the train was coming and had looked, they could have seen it at the bridge 800 yards distant. According to the uniform decisions of this Court, this was negligence on their part, which was the proximate cause of the intestate's death. The nonsuit, therefore, was proper. (99)
Affirmed.
Cited: Towe v. R. R., 165 N.C. 3; Ward v. R. R., 167 N.C. 152; Tysonv. R. R., ib., 216; Treadwell v. R. R., 169 N.C. 697; Hill v. R. R., ib., 741; Davis v. R. R., 170 N.C. 584, 586, 587; Horne v. R. R., ib., 656.