S. P. WARD, Administrator, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 7 November, 1914.).

1. Railroads—Rights of Way—Pedestrians—Look and Listen—Contributory Negligence—Proximate. Cause—Trials—Nonsuit.

Whether a trespasser or a licensee by custom, a person walking along a railroad track is required, by his having thus chosen a dangerous place to walk, to use diligence in protecting himself from being run over or injured by a train passing there, by the use of both his faculties of looking and listening; and the employees of the railroad, having a superior right to the usage of· the track for the running of the company's trains, may assume to the last moment that the pedestrian, apparently having a proper use of his faculties, will leave the track in time to avoid an injury; and when he has failed to do so, and the track is unobstructed, and by the use of his faculties he could have perceived his danger in time to avoid the injury complained of, his omission to perform this duty required of him is the proximate cause of his injury, and a recovery of damages will be denied. *Talley v. R. R.*, 163 N. C., 567, cited and distinguished.

2. Same—Signals—Lookout.

Where a recovery of damages for a personal injury is denied by reason of the failure of a pedestrian walking on the railroad track to exercise the proper degree of care required of him to leave the track in time to avoid the injury complained of, it is his own negligence which bars his recovery, irrespective of the duty of the employees of the railroad company to keep a lookout in front of the moving train, or give warnings of its approach.

3. Same—Side-tracks—Noises.

The doctrine that a pedestrian on a railroad track is required to exercise his faculties to look and listen to protect himself from the consequences of his having used this dangerous place for walking, applies to side-tracks which are customarily used; and where the pedestrian in full use of himself and his faculties has attempted to walk upon the right of way, not far from a station, where there are a main and two side-tracks, one of the side-tracks being then used by a train, and to avoid another train passing on the main line has stepped over to the other side-track, and while walking there is killed by the engine and car from the main-line train backing down upon him, in broad daylight, and when by looking or listening, or in the proper exercise of his faculties he should have seen the engine and car approaching in time to have left the track for a place of safety, his death is solely attributed to his own negligence, without reference to whether the train on the other side-track was making too much noise for the engine and car to have been heard, or whether there was a proper lookout placed or signals given to him.

CLARK, C. J., dissenting.

Appeal by defendant from *O. H. Allen, J.*, at February Term, 1914, of COLUMBUS.

This action was brought by the plaintiff as administrator of Noah Nobles, to recover damages for the alleged negligent killing of his intestate. The facts are few and simple. The intestate, in broad daylight, was walking on the track of the defendant, known as the Conway branch, towards his home, 3 miles away. He saw a freight train approaching, and stepped from the main line onto the west side-track, and continued on his journey. The passenger train had already passed by that place. The main track was used as a walkway by the people in that vicinity, and while it does not clearly appear whether the side-tracks were so used, we will assume that they were. There were three side-tracks at this point, that is, between a crossing and the place where he was killed, all leading south towards Conway from Chadbourn. He was killed 200 or 250 yards from the passenger station at Chadbourn, at which latter place he had been talking with one of plaintiff's witnesses just a few minutes before, and then started for his home. He was in good health and had possession of all of his faculties; could see and hear well, and had an unobstructed view of the approaching engine and tender which afterwards struck and killed him. The side-track on which he was walking at the time of the accident turns from the main track 50 yards below the crossing, and the place where he was killed is 350 yards from the point where the side-tracks join the main track.

Charles Jolly, one of the plaintiff's witnesses, testified that he saw the engine and tender backing towards Noah Nobles about three minutes before he was killed. "They came in on the main line and then went down to pull the train in. It had not gone down in the direction in which Nobles was killed until after Nobles had gone down. This train came in there from Conway. The mail-train engine cut loose from the cars to go down to the coal chute after switching on the east side-track. Then it came back on the main line and went on the other track, going to the coal chute. There was another train along there where he was killed—a heavy freight train. That train was shifting on the yard there. It came in to the main line about the time Nobles was killed. It was right against where Nobles was killed." He further said that he did not hear any signal by bell or whistle from the time the engine left the depot until the tender struck Nobles. There were overhanging limbs of trees near the track, but they did not obstruct the view. In regard to the trees, he testified:

"Q. How far from the ground was the lowest limb of those trees? A. They were lower, I judge, than from here to the ceiling. I never measured them. An engine and train of cars could pass under it. You could see a train of cars coming from the east side.

"Q. If you were standing up here to the south of these trees and an engine was coming from the north, you could see it if you were on the track? A. Yes, sir.

"Q. The limbs would not obstruct your view from seeing it? A. No, sir."

There was a train on the main line which was shifting or exhausting steam and making a noise as the engine and tender approached deceased. The engine and tender "were rolling along slowly" and were stopped within 10 feet after the engineer learned that Nobles had been killed. He backed his engine to the place where the body was lying and expressed regret that the accident had occurred.

Fletcher Smith, plaintiff's witness, testified that there was nothing to prevent Nobles from stepping off the track, and that he could have seen the engine approaching him if he had looked. This witness saw him walking on the track just before he was killed. The engineer was in his place in the cab at the time of the accident, but there was no one on the front part of the tender. The killing occurred 80 or 90 yards from the crossing.

Defendant introduced no evidence, and moved to nonsuit. Motion denied, and exception was duly taken. Verdict for plaintiff, judgment thereon, and appeal by defendant.

*D. J. Lewis, Irvin B. Tucker, and H. L. Lyon for plaintiff.*
*Davis & Davis and Schulken, Toon & Schulken for defendant.*

WALKER, J., after stating the case: It is impossible to distinguish this case, in respect to either its general or special features, from those in which we have held, upon a similar state of facts, that the railroad company is not liable, it being a case of *damnum absque injuria*. There are several of our cases precisely like this one in their facts, and to some of them we will advert hereafter.

The principle we have adopted, and it has met with the concurrence of many other courts whose opinions are entitled to the greatest respect, is that when a person is about to cross the track of a railroad, even at a regular crossing, it is his duty to examine and see that no train is approaching before venturing upon it, and he is negligent when he can, by looking along the track, see a moving train, which, in his attempt to blindly pass across the road, injures him. Even where it is conceded that one is not a trespasser, as in our case, in using the track as a footway, but has implied license by reason of a custom in the neighborhood to so use it, it behooves him to be still more watchful. The license to use does not carry with it the right to obstruct the road and impede the passage of trains. A railroad company has the right to the exclusive occupancy of its track, and especially so when running its trains thereon, and its servants are justified in assuming that a human being, either a trespasser or one walking on it by implied license, who has the use of all his senses, will step off a track before the train reaches

him. This was said by *Justice Avery* in *McAdoo's case,* 105 N. C., 140, and is well sustained by the authorities cited therein, viz.: *Bullock v. R. R.,* 105 N. C., 180; 2 Wood on Railroads, sec. 333; *Parker v. R. R.,* 86 N. C., 221; 2 Wood on Railroads, sec. 320. A court of the highest authority has declared that, under such circumstances as those mentioned in the *McAdoo case,* the track, as it seems necessary to repeat with emphasis, is itself a warning to those who may choose to use it as a walkway, even if it is customary for the people in the neighborhood to do so. It is a place of danger and a signal to all on it to look out for trains. It can never be assumed that trains are not on a track, and that there can be no risk to pedestrians from them. But the same has so often been the utterance of this Court that the doctrine has become deeply imbedded in our jurisprudence, and is so just in itself and essential to the public convenience and safety that it would be most unwise to abrogate or even modify it. Public policy and common sense and ordinary prudence alike forbid such a course. The facts of this particular case bring it squarely within the control of that principle, and they so clearly point to the unfortunate negligence of the intestate as the active, direct, and efficient cause of his death, that it would be a hopeless task even to attempt to differentiate it from those cases which have gone before it, and in which we have held, without variableness or the shadow of turning, that there is no negligence to be imputed to the railroad, but all of it is that of the party killed or injured while walking on a track, "in the broad and open day, in front of an approaching train or engine." We have said the precedents are numerous, and this partial array of them will prove it: *McAdoo v. R. R., supra; Parker v. R. R.,* 86 N. C., 221; *Meredith v. R. R.,* 108 N. C., 616; *Norwood v. R. R.,* 111 N. C., 236; *High v. R. R.,* 112 N. C., 385; *Syme v. R. R.,* 113 N. C., 538; *Bessent v. R. R.,* 132 N. C., 934; *Stewart v R. R.,* 128 N. C., 518; *Wycoff v. R. R.,* 126 N. C., 1152; *Sheldon v. Asheville,* 119 N. C., 606; *Beach v. R. R.,* 148 N. C., 153; *Lea v. R. R.,* 129 N. C., 459.

All of these cases have so thoroughly established the principle upon facts substantially identical with those in this record that it would seem to be doing something more than our duty or necessity requires to reiterate the doctrine. But the proposition, as having any application to this case, is earnestly contested, and we must, therefore, proceed to show how completely it fits; and in doing so, a more extended reference to former decisions and the facts upon which they were based may be necessary, in order to show the exact analogy between them and the case at bar.

A railroad track, as was said in *Beach v. R. R., supra,* is intended for the running and operation of trains, and not for a walkway, and the company owning the track has the right, unless it in some way

restricted that right, to the full and unimpeded use of it. The public have rights as well as the individual, and usually the former are considered superior to the latter. That private convenience must yield to the public good and public accommodation is an ancient maxim of the law. If we should for a moment listen with favor to the argument and eventually establish the principle that an engineer must stop or even slacken his speed until it may suit the convenience of a trespasser on the track to get off, the operation of railroads would be seriously retarded, if not practically impossible, and the injury to the public might be incalculable. The prior right to the use of the track is in the railway, as between it and a trespasser who is apparently in possession of his senses and easily able to step off the track.

In *High's case, supra,* an important case on this subject, which has been approved repeatedly since it was decided by a unanimous Court, it appeared that a woman wearing a long poke-bonnet, which totally obstructed her vision, was walking on a side-track, supposing that the approaching train would take the main track, "as they usually did," but it so happened that on the particular occasion it did not, but used the side-track, and it was held to be clear that she could not recover, as she had no right to speculate on the course the engine would take. This is what the Court said with reference to the facts, which are in every essential respect like those we have here: "If the plaintiff had looked and listened for approaching trains, as a person using a track for a footway should, in the exercise of ordinary care, always do, she would have seen that the train, contrary to the usual custom, was moving on the siding. The fact that it was a windy day and that she was wearing a bonnet, or that the train was late, gave her no greater privilege than she should otherwise have enjoyed as licensee, but, on the contrary, should have made her more watchful. There was nothing in the conduct or condition of the plaintiff that imposed upon the engineer, in determining what course he should pursue, the duty of departing from the usual rule that the servant of a company is warranted in expecting licensees or trespassers, apparently sound in mind and body and in possession of their senses, to leave the track till it is too late to prevent a collision," citing *Meredith v. R. R.,* 108 N. C., 616; *Norwood v. R. R.,* 111 N. C., 236. And those cases fully sustain the correctness of the proposition.

Referring to this passage from *High's case* in the recent case of *Abernethy v. R. R.,* 164 N. C., 91, this Court unanimously said that the law was there correctly stated, and that both the *Meredith* and *High* cases hold that a pedestrian, when on the track, is under the absolute duty to look and listen, if he can see and hear, exercising both senses for that purpose, and that the rule is not, in the least, modified by the

fact of its being a side-track instead of the main line; and it was added that the public could not be safely and adequately served upon any other principle. If engineers must stop their trains to await the pleasure or convenience of foot passengers in leaving its tracks, when they can step off so easily and avoid injury and not obstruct or retard the passage of trains, the company cannot well perform its public duty as a carrier, and the public convenience, though superior and of prior right, must give way to private interests, contrary to the just maxim of the law.

In *Meredith's case, supra,* which is essentially and so strikingly like this one, in its facts, it appeared that a boy about 13 years old was going from the house of his father to Hot Springs, and was compelled to pass along the defendant's road where three tracks, as in this case, were laid, there being wire fences on both sides of said tracks. He passed a train apparently headed toward Paint Rock, and not long after, seeing another coming towards him from Hot Springs on the track he was using, he stepped over to the side-track on which the train first seen by him was running, but failed to see it approaching him from his rear till it ran against and injured him. He might have stepped off the track and avoided the injury had he seen the train coming up behind him. He was stricken by the engine and his arm was crushed and afterwards amputated. This Court held, with reference to those facts, that actual or implied license from the railroad company to use its track as a foot-way would not relieve the pedestrian from the duty to exercise ordinary care, and that he must take the consequences of a failure to do so, and that "the license to use the track does not carry with it the right to obstruct or impede the passage of trains," citing *McAdoo's case.* It was also said that the cases on the subject hold that the speed of the train, whether slow or fast, can make no difference, and does not prevent the application of the principle, because the pedestrian, if he exercises due care, can escape danger as well in the one case as in the other. The Court further said, in *Abernethy's case,* citing the *High* and *McAdoo* cases and *Glenn v. R. R.,* 128 N. C., 184: " 'The railroad track itself was a warning of danger, made imminent by the approaching train. It was then his duty to keep his wits about him, and to use them for his own safety. He knew or ought to have known that he was a trespasser, and it was his duty to have gotten out of the way of the train. The defendant was under no obligation to stop its train at the sight of a man on its track.' The Court further said that it was apparent to the engineer that the plaintiff was in full possession of his faculties and could take care of himself, and the engineer had the right to presume that he would leave the track in time to avoid the injury. That he did not do so was his own fault, and he should suffer the consequences of his folly. The doctrine of the cases already cited and decided in this Court

has been firmly established in other jurisdictions, and notably in *R. R. v. Houston,* 95 U. S., 697, where it is said that a person using the track of a railroad company must look and listen, and any failure to do so will deprive him of all right to recover for any injury caused thereby. 'A party cannot walk carelessly into a place of danger,' said the Court in that case, citing several cases from other States. And concluding, it was said: 'It is almost incredible that men will take so many chances under such circumstances. The cases in our courts also hold that neither the fact of an engine being on the south siding and exhausting steam, nor the speed of the oncoming train, which was not, in this case, at all excessive, can make any difference.' *Syme, McAdoo,* and *High cases,* and *R. R. v. Houston, supra."* This Court held in *Norwood's case,* 111 N. C., 236, that it was immaterial whether the intestate went upon the track under a license or as a trespasser, and that if he was apparently in possession of his faculties, and not known to be incapable of taking care of himself, the engineer had the right to assume, up to the very last moment, when it was too late to save him, that he would leave the track and save himself.

No court, perhaps, has expressed itself in more certain and unmistakable terms upon this subject than this one, and with more unanimity. The principle has been often announced, and applied to facts not essentially different from those in this case, that where a person on the track as a trespasser or licensee, is apparently in possession of his senses and faculties, so that he can either hear or see a train, he must listen, and if he cannot hear, he must look, for the approach of trains, and his failure to do so is negligence on his part, which at least concurs, up to the very time of the injury, with that of the defendant, the railway company, if there be any negligence on its part, and he must be considered in law and, we add, by every rule of justice, common fairness, and common sense, to have brought disaster upon himself, if he is injured or killed.

The rule, as stated in our decisions, and we restate and approve it now, is not one peculiar to this Court. It has been generally, if not universally, adopted by other courts, and is thus epitomized by an eminent author: "The company's employees may presume that one, who is apparently able to do so, will get off the track in time to avoid injury to himself." 3 Elliott on Railroads, sec. 1257 *a.* See, also, *Matthews v. R. R.,* 117 N. C., 640; *McArver v. R. R.,* 129 N. C., 380; *Clegg v. R. R.,* 133 N. C., 303; *Pharr v. R. R.,* 133 N. C., 610.

In *McArver's case, supra,* the Court held: "If the intestate was sitting upright with his back to the cross-ties, or in any other attitude which did not make it apparent to the engineer that he was in a helpless condition and in danger of being stricken by the train, then the

engineer could have assumed up to the last moment that he would have gotten out of danger, and the engineer was not bound to either stop his train or slacken its speed, or give him notice by bell or whistle. A lookout by the engineer for such a person in such a position is not required by the law." And in the *Matthews case, supra,* it was said by the *Chief Justice,* that if defendant was negligent in not giving a signal, the act of the plaintiff was much greater carelessness and was the immediate cause of the injury, and he cannot be excused for such disregard of his personal safety. He should have carefully looked and listened for trains, and the engineer had the right to presume that he had done so, and, having failed to do so, his own negligence is regarded as the proximate cause of his injury, citing *Parker v. R. R.,* 86 N. C., 221, and *High v. R. R., supra.*

The case of *Neal v. R. R.,* 126 N. C., 634, is worthy of careful notice in this connection, for it meets the plaintiff's contention at every point, where it is not overthrown by the long line of cases already cited. It was there said that if a person is walking on a railroad track in open daylight, and has an unobstructed view of an approaching train, and was nevertheless run over and injured, he is guilty of such negligence as deprives him of the right to recover damages; and this is so even though an ordinance of a town, as to the train's rate of speed, was being violated at the time, or the bell was not rung as required by the ordinance, or a lookout was not kept by the engineer or fireman, the injury being referred by the law to the plaintiff's own negligence as its proximate cause, citing *McAdoo's case, Syme's case, Meredith's case, Norwood's case, High's case,* all *supra.*

We, therefore, have reached the following conclusions:

1. That the omission to give the signal at a crossing does not, as we have stated, relieve the traveler on the highway of the duty, as a prudent man, to look and listen. *Cooper v. R. R.,* 140 N. C., 209. Both parties are charged with the mutual duty of keeping a careful lookout for danger, and the degree of diligence to be used on either side is such as a prudent man would exercise under the circumstances of the case in endeavoring to perform this duty. *Improvement Co. v. Stead,* 95 U. S., 161.

2. When a person uses the railroad track as a footway, it is in itself a place of great danger, and a constant warning to take care of himself and to look out for his own safety, whether he be a trespasser or licensee.

3. He must carefully look and listen in both directions for approaching trains, and an engineer on a train advancing towards him, if he is apparently in possession of his senses, has the right to assume that he has performed this duty to himself, even until it is too late to save him from injury.

4. That the doctrine applies to side-tracks as well as to main tracks, even though the train is moving on the side-track "contrary to custom," and although the train in either case may be late or behind its schedule time. *High's case,* 112 N. C., at p. 389.

5. The fact that an engine is exhausting steam, or other disturbance is being made which is calculated to drown the noise of the approaching train, is no excuse for not looking and seeing the train, and will not, therefore, alter the case. *Syme's case,* 113 N. C., 558; *Beach's case, supra.* If these settled principles are applied to the facts in this record, the plaintiff has shown no reason why he should recover. The case is really a typical one for the application of the doctrine. It has no exceptional features which exempt it from the control of the usual rule.

The plaintiff contends that the case of *Talley v. R. R.,* 163 N. C., 567, sustains his position and entitles him to recover or to have his cause submitted to the jury; but that is very far from being so. In that case it appeared that the plaintiff's intestate was walking on a siding which had not been used for seven years; the train was running near its schedule time, which was known to the intestate, as was the custom of not using the side-track. Upon hearing the whistle of the approaching train, he crossed from the main track to the siding. The switch uniting the main and side tracks had been tampered with after intestate had passed it, and broken, so that the train was shunted upon the side-track and the engineer knew beforehand, by the red signal at the switch, that it was turned to the side-track—an unusual occurrence—and had ample time thereafter to warn intestate of his danger, which the latter could not anticipate by reason of the special circumstances mentioned. The Court, by *Justice Hoke,* fully recognized, and approved with emphasis, the general principle we have stated; but the majority held that the special and peculiar circumstances of that case warranted its submission to the jury. At the same term, in *Abernethy v. R. R., supra,* the general rule was applied, where the intestate was walking on a siding in use by the company, the Court distinguishing *Talley's case* therefrom and quoting with approval this language of *Justice Hoke* in that case: "We have held in many well considered cases that the engineer of a moving train who sees, on the track ahead, a pedestrian who is alive and in the apparent possession of his strength and faculties, the engineer not having information to the contrary, is not required to stop his train or even slacken its speed because of such person's presence on the track. Under the conditions suggested, the engineer may act on the assumption that the pedestrian will use his faculties for his own protection and will leave the track in time to save himself from injury."

In this case the side-track was in commission, it was a live and not a dead track, apt to be used at any moment, when the necessities of the

road required it. The company was engaged, at the time, in its usual and ordinary avocation of running trains and shifting cars at that place, where numerous trains must have gathered, as it had a main track and three lateral tracks. Its traffic made it necessary to call this siding into requisition. There was nothing unusual or extraordinary in doing so, as a majority of the Court thought there was in *Talley's case*. It was merely an ordinary and usual incident of the traffic at that station. A railroad cannot be operated merely for the accommodation of pedestrians who, for their own convenience, may choose to use its tracks, whether the main line or a siding. Private inconvenience must yield to the general good and welfare, and if pedestrians will resort to the tracks as footways, they must accept the privilege with its concomitant burden, and exercise that degree of care which every prudent man should take for his own safety. If he fails to look and listen at a crossing, where he has a right to be, and is injured thereby, the loss must be his, for there is no injury (*injuria*), says the law. *Cooper v. R. R.*, 140 N. C., 212. This being so, why should he not be required to use the same degree of care and vigilance when walking on the track? *Justice Hoke* says in *Cooper's case:* "This rule is so just in itself and so generally enforced as controlling, that citation of authority is hardly required." On this point, *Coleman v. R. R.*, 153 N. C., 322, is a most valuable one. The fact that the engine was backing with tender in front makes no difference, as we have seen from the cases, as it was daylight and they were in full view of the intestate, if he had looked properly for them. *Purnell v. R. R.*, 122 N. C., 832, and that class of cases do not apply, as there the train was backing in the nighttime with no light or flagman in the forward car. But here, if there had been a flagman, it would not have been his duty to give any signal, for he had the right to assume, as all the cases say, that intestate had looked and listened and would get out of the way. He could have done it easily, as plaintiff's witnesses state, and the defendant was bound to use its track and could not, therefore, change its course.

The intestate was bound to look and listen before proceeding to use the track as a footway and to be on the alert while doing so, in order to avoid an approaching train, and not to walk carelessly in a place of possible danger. Had he used his senses, he would not have failed either to hear or to see the train which was coming. If he omitted to use them, as he seems to have done, and continued to walk on the track regardless of his personal safety, he was guilty of culpable negligence, and so far contributed to his injuries as to deprive him of all cause to complain of others, and his administrator of the right to recover for his death. If using his senses, either or both of them, he saw or heard the train coming, and yet continued on his way in this place of danger,

instead of stepping off the track and allowing the train to pass, and was killed, the consequences of his persistence and rashness cannot be charged against the defendant. *R. R. v. Freeman,* 174 U. S., 383.

There is a very apt and forceful statement of the law, which is directly relevant to the facts appearing in this record, in the much cited and strongly approved case of *Chicago, R. I., and Pac. R. Co. v. Houston,* 95 U. S., 697 (24 L. Ed., 542), which so fully sustains the doctrine, as we have just stated it, and almost in the same words, that the pertinent part of it we deem it proper to substantially reproduce. It is this: "The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees, in these particulars, was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk thoughtlessly or carelessly into a place fraught with danger. If she had used her senses, she could not have failed to know that the train was coming, as it was plainly visible. If she omitted to use them, and walked heedlessly upon the track, she was clearly guilty of blamable negligence, and so far the author of her own misfortune as to take from her the right to accuse others of wrong to her. If, using them, she saw the train coming, and yet attempted to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure. Upon the facts disclosed by the undisputed evidence in the case, we cannot see any ground for a recovery by the plaintiff. Not even a plausible pretext for the verdict can be suggested, unless we wander from the evidence into the region of conjecture and speculation. Under these circumstances, the court would not have erred had it instructed the jury, as requested, to render the verdict for the defendant." And essentially to the same effect are *Crenshaw v. R. R.,* 144 N. C., 316; *Royster v. R. R.,* 147 N. C., 347, and *Exum v. R. R.,* 154 N. C., 408. A rational being should not needlessly venture into places of peril, and if he does, he should use proper precautions to guard against injury. If he fails to do either, and suffers damage in consequence thereof, it must be referred to his rash act and gross inattention to his own security as the true and efficient cause. *Express Co. v. Nichols,* 3 N. J. L., 439. But numerous courts have stated this principle with practical uniformity, and we find that it has been applied to facts not unlike those now presented to us, and to the extent of denying the plaintiff's right of recovery. *Crenshaw v. R. R., supra.* In that case

we said: "As much as we deplore the unfortunate accident which has befallen the plaintiff, we are not permitted to relax those rules of the law which must be applied inflexibly and impartially to all cases coming within the principles they have established. 'It is impossible,' said a learned and a just judge, 'to consider the plaintiff's injuries without a feeling of profound sympathy. His misfortune was a severe one; but sympathy, although one of the noblest sentiments of our nature, which brings its reward to both the subject and the actor, has no proper place in the administration of the law. It is properly based upon moral or charitable considerations alone, and neither courts nor juries are justified in yielding to its influence in the discharge of their important and responsible duties. If permitted to make it a basis of transferring the property of one party to another, great injustice would be done, the foundation of the law disturbed, and anarchy result. Hence, every proper consideration requires us to disregard our sympathy and decide the questions of law presented according to the well-settled rules governing them.' *Laidlaw v. Sage*, 158 N. Y., at p. 104. The true function of judge and jury could not be better stated. Railway companies should be held to a strict accountability for the management of their cars and for the performance of their duty to the public which they serve. The care and vigilance required of them should be proportioned to the increased danger and hazard which the nature of their business creates; but while they are, and properly should be, thus answerable, under the law, for any breach of duty, we should not forget that they are also equally under its protection, and should not be made to pay when nothing is due."

It is argued, though, for plaintiff that there were trees near the side-track, which obstructed the view of deceased; but the witnesses state that there was a clear view, notwithstanding the trees; they did not prevent his seeing the approaching train. Nor is it true that the train not being expected by the intestate can affect the application of the settled principle. The company has the right to the free use of its tracks at all times, and is not bound, in respect to trespassers and mere licensees on them, to adopt schedules for their benefit. It could not perform its duty to the public if such were required of it. But the law is that the pedestrian, if a trespasser, or if a mere licensee, in using his implied privilege, must take care of himself against all kinds of trains, whether backing or not, and the liability is determined by his conduct. The company proves his contributory negligence when it appears from the case that he was walking on the track, when by looking or listening he could see the train and get off before it reached him. This was the doctrine of *Neal v. R. R.*, 126 N. C., 634, the headnote being this: "Where the evidence on the part of the plaintiff (the defendant having

introduced none) is demurred to, and, if true, establishes negligence on the part of the plaintiff and of the defendant, concurrent to the last moment, a judgment as of nonsuit, sustaining the demurrer, is proper," the Court citing *High's case, McAdoo's case, Norwood's case, Syme's case,* all *supra; Smith's case,* 114 N. C., 728, and many others. It has been said by this Court repeatedly that failure to keep a lookout, or moving backwards, makes no difference, as if the engineer had actually seen the pedestrian walking ahead of his train, he was not required to stop or slacken his speed, as he would have the right to assume that the track-walker had looked or listened in due time and would step off the track before the train could reach him, and that this right continues down to the very last moment of time, when it is too late to save him. *High v. R. R., McAdoo v. R. R.,* and other cases, *supra.*

*Fitzgerald v. R. R.,* 141 N. C., 534, is far from being in point. It involved a very different question, calling for the application of a different principle. The facts here do not establish "a reasonable probability of actionable negligence" on the part of the defendant, but far from it, as the law refers the injury to or death of the pedestrian to his own lack of due care as the proximate cause of the same. *Neal v. R. R., supra,* and other cases above. *Meroney v. R. R.,* 165 N. C., 611, is equally as far from the point. In that case the plaintiff was injured at a public crossing, and not while walking longitudinally on the track. His right and that of the defendant at the crossing were equal and reciprocal, as we have said, and he was entitled to some warning of the train's approach under the admitted facts of the case. He was, at the time of his injury, standing where he had the absolute right to be, in the transaction of his business. The engineer backed his train against two box cars, the brakes of which had not been turned on, across a public crossing, much used and frequented by a thickly settled neighborhood, and this was done without the slightest notice to those using it as they had the right to do. This was gross negligence, but is not our case at all.

Upon the conceded facts of our case, we cannot avoid the application of the legal principle established by the cases decided by this Court upon substantially the same state of facts.

We finally conclude that the court should have granted the motion to nonsuit, and its failure to do so was error. Let the verdict and judgment be set aside, and a judgment dismissing the action will be entered.

Reversed.

CLARK, C. J., dissenting: The plaintiff's intestate was killed by a shifting engine running backwards with its tender, without ringing the bell or blowing the whistle, and without any lookout on the front of the

tender as it was running back. The jury found that there was evidence of negligence on the part of the defendant, and the judge sustained that view. The defendant has abandoned all the exceptions except the motion for nonsuit.

The evidence is that the defendant's intestate left the station at Chadbourn, going home along the defendant's track, which had been used by the public as a walkway for fifteen or twenty years. There was no train expected at the time to go in the direction that the deceased was going, and in fact no train went in that direction at that time. Soon after he left, a heavy freight train came in on the main line with a long train of cars making a great noise, and to avoid this he stepped on the side-track on the west side of the main line, which had no train on it, and while walking along this side-track in the rain, and under the trees growing within a few feet of the track, and while defendant's freight engine was opposite him, making a great amount of noise, the defendant detached an engine and tender from the passenger train which was on a side-track east of the main track, facing in the opposite direction, ran it up to the station, and then backed that engine and tender on the west side-track where the plaintiff's intestate was walking, and without giving any warning by ringing the bell or blowing the whistle and without keeping a lookout and without having any person stationed on the end of the backing tender to keep a proper lookout, ran over the plaintiff's intestate and instantly killed him. The defendant's engine and tender were making practically no noise, slipping along at a low rate of speed not exceeding 6 or 8 miles an hour, and could have been stopped within 10 feet.

This is a summary of the evidence. What is there in this evidence that licensed the defendant to kill Noah Nobles without any liability on its part? The defendant's track had long been used as a public walkway. Nobles in passing the defendant's switch on the side-track saw that it was closed; the heavy freight train was on the main track; the passenger train headed the other way was on the east side-track; and there was nothing to put him on notice that there would be any train coming on the west side-track on which he was walking. The defendant's train gave the intestate no notice by ringing the bell or blowing the whistle, and the engineer on the shifting train must have been negligent or he could have seen the defendant on the track in time to avoid killing him, for the evidence is that he could have stopped his train within 10 feet. He evidently was not looking in the direction in which the engine and tender were backing, and he had no outlook there, nor did he ring the bell or blow the whistle. It would be difficult to find a case where the negligence was greater than that shown by the defendant in taking the life of Noah Nobles on this occasion. Had the backing

train under these circumstances run over a pig or a cow there could be no question as to the liability of the defendant for such negligence.

There was nothing to require the intestate to "look and listen." He was not crossing the track. There was no train to come on the side-track where he was. He saw both trains that were there and stepped off the main track upon the side-track to the west. He knew the passenger train was on the side-track east of the main track. It was the unusual movement of shifting an engine and tender that was at the head of the mail train on the east side-track across the main track where the freight train was and then unexpectedly running it backwards on the west side-track without signal, without a lookout, and killing the intestate because the engineer did not see the intestate when he should have seen him or should have given him notice, that caused the death of the intestate. All this constituted negligence on the part of the defendant, and if in any way there was negligence on the part of the intestate to exculpate this negligence on the part of the defendant, the burden was on the defendant to allege and prove it.

The authorities agree that it is the duty of the engineer while running his train to keep a lookout, and that the company is liable for any injury which he could have seen and avoided by a proper lookout. Greater care should be required when the engine and tender or train are moving backward, as the operation is more dangerous.

As was well said by *Hoke, J.,* in *Fitzgerald v. R. R.,* 141 N. C., 534: "Direct evidence of negligence is not required, but the same may be inferred from facts and attendant circumstances, and it is well established that if the facts proved establish the reasonable probability that the defendant has been guilty of actionable negligence, the case cannot be withdrawn from the jury, though the possibility of accident may arise on the evidence."

In Sherman and Redfield Negligence, sec. 58, it is said: "The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover unless the defendant produce evidence to rebut the presumption. It has sometimes been held not sufficient for the plaintiff to establish a probability of the defendant's default, but this is going too far. If the facts proved render it probable that the defendant violated its duty, it is for the jury to decide whether it did so or not. To hold otherwise would be to deny the value of circumstantial evidence."

The plaintiff was walking along the side-track where people had been accustomed to walk for fifteen or twenty years, as the defendant knew. There was no reason to expect any train to come on the side-track at that time, and none came. An engine and tender were detached from

a train on the east side-track, run down to the station beyond the freight train which was on the main track, and were unexpectedly backed on the west side-track where the plaintiff's intestate was walking, and run backwards without any signal, by bell or whistle, to those who might be expected to be walking there, without any outlook on the rear end as the train was backing, and evidently without any outlook on the part of the engineer in the direction in which he was going, for the evidence is that his engine and tender could have been stopped in 10 feet. If he saw the defendant thus walking along unconsciously in the rain and deafened by the noise of the freight engine, while his own engine was making no noise, he was criminally liable for killing the intestate. If he did not see him and give notice, it was negligence for which the defendant is liable unless contributory negligence is alleged and proven as required by our statute.

In a very recent case, *Meroney v. R. R.,* 165 N. C., 611, it was held: "It is negligence *per se* for the employees on a railroad freight train to back its train on a side-track without some one on the front to give notice of its approach and to signal threatened danger to pedestrians, and it is actionable when injury is thereby caused." This case cites, among many others, *Purnell v. R. R.,* 122 N. C., 832, where the engine was pushing backward a train of box cars. It also cites among other cases to same purport *Pharr v. R. R.,* 119 N. C., 756; *Bradley v. R. R.,* 126 N. C., 741; *Jeffries v. R. R.,* 129 N. C., 236; *Lassiter v. R. R.,* 133 N. C., 244, and adds: "In *Beck v. R. R.,* 146 N. C., 458, it was held that the Court had over and over again declared that to run an engine suddenly backward without warning or signals, or some one on the rear of the train to give notice, was culpable negligence."

Upon all the evidence it would seem not only that there was evidence sufficient to go to the jury, but the conclusion is unescapable that the death of Noah Nobles was caused by the negligence of the defendant.